611 So.2d 205 (1992)
Virginia Kackley Barnett LOVE
v.
Joseph Milton BARNETT.
No. 91-CA-0146.
Supreme Court of Mississippi.
December 17, 1992.
Walterine Langford, Vicksburg, for appellant.
David M. Sessums, Varner Parker Sessums & Akin, Vicksburg, for appellee.
*206 Before HAWKINS, P.J., and PITTMAN and ROBERTS, JJ.
PITTMAN Justice, for the Court:
Virginia Kackley Barnett Love[1] and Joseph Milton Barnett were divorced July 21, 1988, on the grounds of irreconcilable differences. Love was granted primary physical custody of the two children, with joint physical and legal custody shared with Barnett. Barnett was ordered to pay Love $200.00 a month child support. On May 25, 1990, Love filed a petition for modification of visitation rights, requesting specific visitation rights be set out. Barnett filed a counter-motion asking for sole custody. Following a hearing on December 6, 1990, Chancellor Nat W. Bullard announced the ruling of the court. He modified the visitation schedule and denied the counter-motion. Apparently, Chancellor Bullard died before an order could be entered into the record, and Chancellor James E. Nichols signed the order granting the modification. Love appeals, claiming the order signed is different from the bench ruling by Bullard.

I.
Virginia Kackley Barnett Love was divorced from Joseph Milton Barnett in July 1988. She and Barnett had two children, Bridgette Marie Barnett and Joseph Kyle Barnett, 7 and 6 respectively at the time of trial on December 6, 1990. Love testified the children normally spend every weekend with their father. No specific visitation schedule was set out in the divorce decree. Love said Barnett kept the children for the summer immediately following the divorce, but now gets them every weekend in the summer and longer if he wants.
Love testified at trial she married Billy Roger Love two months after her divorce and lives with him in a two bedroom trailer. Four children also live in the twelve (12) by fifty (50) trailer. Love said Bridgette and Kyle sleep in a room, and the babies sleep in the bedroom with her and her husband. She said they were planning to add another room in January. Billy Roger Love works for a farmer and Love does not work.
Love filed the motion to modify visitation because she said the children are dirty when her former husband sends them to school on Mondays. Their hair is unwashed and they have not had a bath, she said. Love also said her time with the children is limited during the week and she would like one weekend a month to spend quality time with them.
Barnett lives in a house near his mother and stepfather, who help him take care of the children. He said the visitation schedule at the time of trial developed over time. He and Love have a hard time communicating, so it is difficult for them to work out an alternative schedule. If the chancery court orders custody with Love and sets a visitation schedule, he said, he should be given equal time with the children.
After hearing the evidence, Chancellor Nat W. Bullard issued the following bench ruling regarding visitation:
On visitation, both counsel well know the Court's feelings about specific visitation. It's difficult. And in the case of illness or any one of a number of family problems in either one of the two separate households it can be a real problem to everybody. I give you full latitude in drafting a Decree to try to cover this in the best way possible.
The mother's [sic] entitled to just as much weekend time with these children as the father. And the father will be granted two weekends per month of visitation from Friday after noon at a time which each counsel has latitude to agree upon until some time Sunday evening when they will be returned, and (that) should be in time for them to get their baths and get to bed. I would assume probably somewhere around 6:00 or 7:00, but I'll give counsel latitude on that, of course.
The parties will have alternate major holidays, and I'll give counsel latitude to specify that. Some people include Mother's Day and Father's Day as major holidays. That can be whatever counsel can agree upon. And the holidays will have *207 priority over the weekend visitation that's otherwise provided. The father should have half of the Christmas vacation period and this should alternate year-to-year. I'll give counsel latitude as to how to (set) that up. The same is true of Spring Break. The father should have the children for somewhere about six weeks in the summer. I will give you latitude in setting that up whether it's to be in one stretch or whether it should be broken up into several stretches. And it should certainly include the period (of) vacation.
During the period of summer visitation, if it extends for more than a week at a time, the mother should have them alternate weekends the same as the father or at least two weekends a month, the same as the father. And it should be specified on the same time basis.
The father  the Court will  although this is a little bit beyond the pleadings, I think it's essential for the welfare of these children that the father be required to carry the medical insurance that he presently has, and that the mother be provided with the appropriate documentation so that in the event it is necessary for these children to receive medical care that she can obtain that under the medical coverage... .
The visiting parent would be responsible for the transportation at each visitation, both pickup and return of the children... . I'll give counsel latitude to discuss it, but, basically, we've always pretty well stuck to the visiting parent is responsible for the pick up and delivery of the children.
After the above bench ruling on December 6, 1990, Chancellor Bullard died before entering an order into the record. Thereafter, Chancellor James E. Nichols entered the order on January 17, 1991, which changed Chancellor Bullard's bench order in part, by providing the parents could use the school bus to transport the children and eliminating the medical insurance provision.

II.
Did the interim Chancellor err in modifying the bench opinion of the sitting Chancellor who died prior to the signing of the Judgment.
Love claims that Chancellor Jim Nichols, who eventually entered the order, erred by providing that the children will ride the school bus to and from their parents' respective houses when available, by allowing the children to spend Sunday night with their father during the school year on visitation weekends, and by omitting reference to the medical insurance.
Under this Court's limited scope of review, findings of fact made by a chancellor will not be disturbed if this Court finds substantial evidence supporting these factual findings. Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983) (citing Anderson v. Watkins, 208 So.2d 573, 575 (Miss. 1968); Culbreath v. Johnson, 427 So.2d 705, 707-708 (Miss. 1983)). As to issues of fact where no specific findings have been articulated by the chancellor, this Court proceeds upon the "assumption that the chancellor resolved all such fact issues in favor of appellee," Tedford, 437 So.2d at 417; Harris v. Bailey Avenue Park, 202 Miss. 776, 791, 32 So.2d 689, 694 (1947); Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983), or as a minimum, in a manner which would be in line with the decree. Tedford, 437 So.2d at 417. "[I]f there be substantial evidence undergirding such a `presumed finding', we will not disturb it." Tedford, 437 So.2d at 417. Additionally, where the chancellor reaches a correct result in accordance with the law and facts, this Court will affirm the result even though "a wrong reason be assigned." Tedford, 437 So.2d at 418; Huffman v. Griffin, 337 So.2d 715, 723 (Miss. 1976). In this case, the chancellor's findings of fact are randomly included within his oral opinion.
The foregoing standard of review applies to both chancellors. In Banks v. Banks, 511 So.2d 933 (Miss. 1987), this Court confronted a chancellor's authority to modify his oral pronouncement from the bench in his later written judgment. It noted that the Comment to M.R.C.P. Rule 54 distinguishes *208 the lower court's findings of fact and conclusions of law from the filing of the judgment. The latter, of course, is necessary to terminate the litigation. Banks, 511 So.2d at 935. This Court held that because there could be no appeal until entry of judgment into the court minutes, the chancellor acted within the boundary of his discretion when he modified his bench ruling. Banks, 511 So.2d at 935.
We distinguish Banks from the current situation because of the unique situation. In the case sub judice, the oral ruling was entered by the chancellor who heard the evidence; the final judgment was entered by an interim chancellor who did not sit at the hearing, nor have access to a transcript.[2] Rule 63(b) of the Mississippi Rules of Civil Procedure provides:
After Verdict or Findings. If for any reason the judge before whom an action has been tried is unable to perform the duties to be performed by the court after a verdict is returned, or after the hearing of a non-jury action, then any other judge regularly sitting in or assigned under law to the court in which the action was tried may perform those duties; but if such other judge is satisfied he cannot perform those duties, he may in his discretion grant a new trial.
This rule affords an interim chancellor the authority and discretion of the previously sitting chancellor.
However, we find that in this case Chancellor Bullard was best situated to determine the appropriate remedy as he listened to the testimony of the differing parties. Indeed, the provisions of his oral ruling from the bench are amply supported in the record, while the subsequent modifications are not. It was Chancellor Bullard who listened to the testimony and was in the best position to determine matters such as transportation and medical insurance.
This opinion should not be read to lessen the authority of Miss.R.Civ.P. 63, and the power it vests in an interim judge. In this situation, the interim judge apparently had no access to the record when he modified the bench ruling. There was no additional hearing after the one presided over by Chancellor Bullard. Nor was there was additional evidence introduced into the record to warrant the subsequent modification of the bench ruling. To uphold that modification there must be some evidence supporting it. There is none.
We acknowledge that the bench ruling is not final and is subject to modification by the chancellor. It is not, however, subject to modification by an interim chancellor without further hearing or without transcript of previous hearing and without agreement by the parties. The modification insofar as the parties and this Court is concerned has no justifiable basis and must consequently be arbitrary and capricious.
As always in cases concerning support of children, the best interest of the child is the "touchstone" which this Court must keep in mind. Tedford, 437 So.2d at 417 (citing Tammen v. Tammen, 289 Minn. 28, 182 N.W.2d 840, 841-842 (1970)). Child support is awarded to the custodial parent for the benefit and protection of the child. Cumberland v. Cumberland, 564 So.2d 839 at 847 (Miss. 1990); Alexander v. Alexander, 494 So.2d 365, 368 (Miss. 1986). The chancellor is "accorded substantial discretion and is charged to consider all relevant facts and equities," in child support modification proceedings, "to the end that a decree serving the best interests of the children may be fashioned." Tedford, 437 So.2d at 417. Given this discretion, Chancellor Bullard did not err in ordering Barnett to provide medical insurance for his children, or ordering the visiting parent to provide transportation, or in eliminating Sunday nights before school at their father's house.

CONCLUSION
Given the evidence supporting Chancellor Bullard's oral ruling from the bench, we find the interim chancellor erred in modifying *209 the bench ruling. We reverse the interim chancellor's order and remand, ordering the current chancellor to reinstate all provisions of the bench ruling. Specifically, Joseph Milton Barnett is again ordered to maintain medical insurance on the children, and the visitation schedule set out in the bench ruling is to be followed. In accordance with the bench ruling, the visiting parent shall be responsible for transportation of the children, both pickup and return, on his or her visitation. This Court does remand, however, so that the trial court may consider Chancellor Bullard's oral ruling and the proposed modification by the interim chancellor.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, BANKS, McRAE and ROBERTS, JJ., concur.
NOTES
[1] Virginia Kackley Barnett Love remarried following the divorce with Barnett.
[2] The final judgment was entered January 15, 1991. The transcript was not filed with the chancery court until October 28, 1991.