791 So.2d 285 (2001)
Shirley TILLMAN, Appellant,
v.
Wallace TILLMAN, Appellee.
No. 1999-CA-01456-COA.
Court of Appeals of Mississippi.
July 24, 2001.
*286 Gary L. Roberts, Gautier, Attorney for Appellant.
Michael L. Fondren, Pascagoula, Attorney for Appellee.
Before McMILLIN, C.J., IRVING, and CHANDLER, JJ.
McMILLIN, C.J., for the Court:
¶ 1. This is an appeal from an order of the Chancery Court of Jackson County modifying the terms of an earlier divorce judgment relating to the provision of health care to the divorcing wife. We affirm the decision of the chancellor for reasons we will proceed to state.
¶ 2. When Wallace and Shirley Tillman were divorced in January 1997, the divorce judgment ordered that Mr. Tillman continue to provide health insurance coverage for Mrs. Tillman and that he be responsible for one-half of Mrs. Tillman's medical expenses not covered by insurance. However, in March 1998, Mr. Tillman sought to have this provision modified, alleging that Mrs. Tillman was not providing him with *287 sufficient information to determine whether her extensive medical bills were reasonable and necessary. He further contended that Mrs. Tillman was abusing narcotic substances by obtaining multiple prescriptions from different doctors, the result being a substantial expense to him not based on legitimate health care concerns. He urged that this constituted grounds to modify his obligation.
¶ 3. The chancellor, after a hearing on the petition, made no finding of fact that Mrs. Tillman's medical expenses were unreasonable or unnecessary as alleged by Mr. Tillman. Neither did he find that Mrs. Tillman was wrongfully abusing prescription narcotic drugs to Mr. Tillman's financial detriment. However, the chancellor did find that Mrs. Tillman had consistently incurred substantial medical costs since the time of the divorce and that this was causing financial problems for Mr. Tillman.
¶ 4. Though no allegations regarding difficulties with providing health insurance to Mrs. Tillman were raised in the pleadings, there was evidence presented at the hearing that Mrs. Tillman had been covered by health insurance guaranteed to her under federal COBRA regulations, but that the period of COBRA coverage was about to expire and there was uncertainty as to whether Mrs. Tillman could obtain some alternate form of coverage and what that coverage, if available, might cost.
¶ 5. Indicating that he was "struggling with finding an equitable resolution to this situation," the chancellor modified the original judgment to provide that Mr. Tillman's obligation regarding health care costs not covered by insurance would be reduced from 50% to 25%, with a monthly cap on such costs of $250. Taking into consideration the impending end of Mrs. Tillman's COBRA health insurance coverage, the chancellor further ordered that, once that coverage expired, Mr. Tillman's obligation, rather than directly providing insurance coverage, would be to pay to Mrs. Tillman the amount he had previously been paying for her COBRA coverage approximately $360 per monthplus the previously-announced 25% of non-covered medical bills subject to the $250 monthly cap. Thus, under the chancellor's modified judgment, Mr. Tillman's minimum monthly obligation regarding Mrs. Tillman's health care would be $360 per month for those months when Mrs. Tillman had no medical expenses not covered by insurance and his maximum monthly obligation would be $610.
¶ 6. Mrs. Tillman has appealed to this Court from that decision, arguing the single proposition that the chancellor erred at the outset because there was no evidence of a post-divorce material change in circumstance that would justify modifying the original judgment. Mr. Tillman counters that argument by suggesting that the evidence of Mrs. Tillman's substantial postdivorce medical costs was, in itself, proof of a material change in circumstance that would warrant modification. He also argues that the impending loss of COBRA coverage, which he contends will inevitably cause a substantial increase in Mrs. Tillman's non-covered medical expenses, was not foreseeable at the time of divorce and is, thus, an independent basis to find a material change in circumstance warranting modification of the original judgment.

I.

Discussion
¶ 7. Both parties base their arguments before this Court on the question of whether or not the chancellor had a legally recognized basis to modify the earlier judgment; i.e., whether there had been a post-judgment material change in circumstance. *288 Taylor v. Taylor, 392 So.2d 1145, 1147 (Miss.1981). It is the view of this Court, however, that the issue before us is one more fundamental than that. It goes, not to the chancellor's authority to modify his original divorce judgment, but to the propriety of originally imposing such an open-ended obligation insofar as the initial judgment obligated Mr. Tillman to pay one-half of any future medical expenses for Mrs. Tillman not covered by available insurance.
¶ 8. Divorce, including the power of the chancellor to make provision for support and maintenance of divorcing spouses, is a creature of statute. Massingill v. Massingill, 594 So.2d 1173, 1175 (Miss.1992). Any financial provisions relating to the dissolution of a marriage, in order to be legally binding on the parties, must have as their basis some foundation in statute. In Mississippi the chancellor's authority in this case is derived from Section 93-5-23 of the Mississippi Code, which allows the chancellor, incident to granting a divorce, to "make all orders ... touching the maintenance and alimony of the wife...." Miss.Code Ann. § 93-5-23 (Supp.2000). Case law interpreting this statutory authority has evolved to the point where there are now essentially three recognized forms of post-divorce spousal support. They are lump sum alimony, periodic alimony, and rehabilitative alimony. Hubbard v. Hubbard, 656 So.2d 124, 129-31 (Miss.1995). There appears to be no problem with the chancellor's order that Mr. Tillman continue to provide medical insurance for Mrs. Tillman, since prior decisions of the Mississippi Supreme Court and this Court have condoned such requirements in varying forms. See, e.g., Ferguson v. Ferguson, 639 So.2d 921, 936 (Miss.1994); Driste v. Driste, 738 So.2d 763, 766 (Miss.Ct.App.1998).
¶ 9. We conclude that the courts have approved such payments on the theory that, due to the relatively fixed and determinable cost of such an obligation, it could be deemed in the nature of alimony. In Voda v. Voda, for example, the supreme court sanctioned a requirement that Mr. Voda provide health insurance coverage for Mrs. Voda for eighteen months on the theory that the requirement could be classed as a form of rehabilitative alimony. Voda v. Voda, 731 So.2d 1152, 1157 (Miss. 1999).
¶ 10. However, none of the decisions in cases discovered by this Court included a provision that the former spouse pay, in addition to the premium, some part of future medical expenses when such expenses are, at the time of the judgment, unknown and unknowable. It is apparent that a support obligation that has the potential to vary without limit from month to month would, in each instance, constitute a modification of the support obligation. Future support in the form of alimony may only be modified by the chancellor. Elliott v. Rogers, 775 So.2d 1285, 1288 (¶ 10) (Miss.2000). Any such modification, in order to be effective, must be based on a preliminary finding of fact by the chancellor that a material change in circumstance has occurred that would warrant modifying the original decree. Goodin v. Department of Human Services, 772 So.2d 1051, 1057 (¶ 21) (Miss.2000). Normally, in an alimony modification calling for an increase, the core considerations are (a) increased need on the part of the obligee in some combination with (b) an increased ability to pay on the part of the obligor. Towles v. Towles, 243 Miss. 59, 137 So.2d 182, 185 (1962). The Mississippi Supreme Court has deviated from these considerations in one instance in which it approved an automatic escalator clause for alimony based solely on fluctuations in the *289 consumer price index. Speed v. Speed, 757 So.2d 221, 225 (¶ 12) (Miss.2000). However, in that case, the court noted that the provision had been mutually agreed to by the parties at the time of the divorce. Speed, 757 So.2d at 225 (¶ 14). There was no such agreement in this case and we hold that the chancellor was without authority under existing case law to burden Mr. Tillman with a support obligation that had the potential to vary widely from month-to-month in a never-ending series of modifications without any upside limit and without consideration of one of the critical factors in a modification proceeding, i.e., the obligor's ability to pay.
¶ 11. We are, therefore, left with the proposition that the chancellor's original judgment constituted an abuse of the discretion given him in such matters. However, since neither party complained in a timely manner to the entry of the divorce judgment on that ground, we decline to give any retroactive effect to our determination. Rather, we simply find it inappropriate to give the original provisions of the divorce judgment any future effect.
¶ 12. That necessarily brings on the question of whether the chancellor's modification, though perhaps undertaken for the wrong reason, nonetheless brings Mr. Tillman's support obligation within one of those provisions recognized by existing law. We conclude that it does. A support obligation that has the potential to vary within certain strictly fixed limits such as this one, i.e., between $360 and $610 per month, depending upon Mrs. Tillman's health care needs, is in our view sufficiently fixed in amount to take on the attributes of periodic alimony. Neither do we find this modified obligation, even assuming that it reaches the maximum of $610 in each month, to be so unduly burdensome to Mr. Tillman based on the proof of his financial situation as to constitute an abuse of the chancellor's discretion. McEachern v. McEachern, 605 So.2d 809, 814 (Miss.1992).
¶ 13. It is a standard practice of the appellate courts of this state, in the name of judicial economy, to affirm the decisions of the lower court when we conclude that the right result has been reached, even if for the wrong reason. Tedford v. Dempsey, 437 So.2d 410, 418 (Miss.1983). We apply that principle in this case to affirm the judgment of the chancellor.
¶ 14. THE JUDGMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
SOUTHWICK, P.J., THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PAYNE AND BRIDGES, JJ. PAYNE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.
KING, P.J., DISSENTING:
¶ 15. I dissent from the majority opinion adopted herein. The majority seeks to (1) place itself in the role of the trial court in the disposition of this case, (2) decide an issue which was not raised by either party and is not properly before this Court, and (3) announce as the law, that which is not the law.
¶ 16. The Tillmans were divorced in January 1997. Included in that judgment of divorce was a requirement that Mr. Tillman provide health insurance coverage for Mrs. Tillman and pay one-half of her medical expenses not covered by insurance. Neither of the Tillmans appealed from this 1997 judgment, and its provisions therefore became final and binding. *290 Childers v. Childers, 717 So.2d 1279 (¶ 20) (Miss.1998).
¶ 17. In 1998, Mr. Tillman filed a motion, which sought modification of the requirement that he pay one-half of Mrs. Tillman's uncovered medical expenses. Mr. Tillman did not request elimination of this provision, but rather asked the chancellor to require proof that the bills were reasonable and necessary. The chancellor did not eliminate that requirement, but did modify it.
¶ 18. The majority states that neither party has appealed whether it was proper for the chancellor to require that Mr. Tillman pay a portion of Mrs. Tillman's uncovered medical expenses. Nevertheless, the majority undertakes to decide that issue which has not been presented for appeal, and which because of the lack of a timely appeal, must be considered as settled. Childers, 717 So.2d at 1279 (¶ 20).
¶ 19. Rule 28(a)(3) of the Mississippi Rules of Appellate Procedure,[1] does permit this Court to at its option take note of "plain error." Tower Loan of Mississippi, Inc. v. Jones, 749 So.2d 189 (¶ 11) (Miss. Ct.App.1999). Plain error must first be open and obvious in the record and, second, must be properly before the court. Where the matter is not properly before the court, it is not subject to "plain error."
¶ 20. In this case, the issue of whether the chancellor should have required Mr. Tillman to pay a portion of Mrs. Tillman's uncovered medical expenses was not properly before this Court.
¶ 21. Rule 4(a), M.R.A.P.[2] provides that notice of appeal must be given within thirty days of entry of judgment. The judgment which the majority addresses was entered in January 1997, and no appeal was taken from it.
¶ 22. Assuming arguendo, that there was a timely appeal of the 1997 judgment, the action of the majority would still be inappropriate.
¶ 23. In order to be the subject of "plain error" review, an issue must affect a substantial right. Tower Loan of Mississippi, Inc., 749 So.2d at 189 (¶ 11). The majority does not, and cannot identify, the affected substantial right, upon which it relies to view this matter as plain error.
¶ 24. The majority seeks to avoid this pitfall by making its decision prospective rather than retrospective, saying, "However, since neither party complained in a timely manner to the entry of the divorce judgment on that ground, we decline to give any retroactive effect to our determination. Rather, we simply find it inappropriate to give the original provision of the divorce judgment any future effect."
*291 ¶ 25. The majority opinion correctly identifies the statute which allows the chancellor to order support saying, "In Mississippi the chancellor's authority in this case is derived from Section 93-5-23 of the Mississippi Code, which allows the chancellor, to `make all orders .... touching the maintenance and alimony of the wife....'" However, the majority opinion ignores several very pertinent portions of the statute. The opening sentence of Section 93-5-23 states, "When a divorce shall be decreed from the bonds of matrimony, the court may in its discretion, having regard to the circumstances of the parties and the nature of the case, as may seem equitable and just, make all orders touching the case, custody and maintenance of the children of the marriage, and also touching the maintenance and alimony of the wife or the husband, or any allowance to be made to her or him...."
¶ 26. When read in its entirety, this language does in fact allow the chancellor to define the circumstances of payment, when it is not possible to define the amount of payments. It is this language which allows a chancellor to require payment of reasonable college and other educational bills for a child, or future medical expenses.[3]
¶ 27. Because I believe the majority misreads the law in (1) noticing as plain error a matter which is not properly or timely before this Court, and (2) making the blanket statement that the chancellor lacked authority to require payment of defined, but unspecified medical expenses, I dissent.
PAYNE AND BRIDGES, JJ., JOIN THIS SEPARATE OPINION.
PAYNE, J., DISSENTING:
¶ 28. I join Judge Kings' dissent but write separately to point out what I believe to be the basic unfairness of the chancellor's solution even if the issue were properly before him. I agree with the majority when it states that courts may order a spouse to furnish health insurance. Driste v. Driste, 738 So.2d 763, 766 (Miss.Ct.App. 1998). I disagree that ordering a payment of a percentage of uncovered medical expenses is an abuse of discretion initially because the costs would fluctuate and amount to a modified obligation each month. Therefore, the trial court set a figure for payment of insurance premiums which probably will be inadequate at the outset as the wife's present insurance is about to expire.
*292 ¶ 29. If the divorce decree said the husband would provide the wife with medical insurance, it is a stretch to say that this means he will contribute a preset amount toward her providing insurance for herself regardless of its cost. With medical costs, particularly prescription drug prices, rising exponentially all out of proportion with any other economic factor in our nation, the requirement in the original divorce that the husband should provide her with health insurance should not be materially altered to shift the burden to her without a finding of a major change in circumstances that could not have been anticipated. That medical insurance premiums would rise could not be said to have been unanticipated.
NOTES
[1] M.R.A.P. 28(a)(3):

(a) Brief of the Appellant. The brief of the appellant shall contain under appropriate headings and in the order here indicated:
(3) Statement of Issues. A statement shall identify the issues presented for review. No separate assignment of errors shall be filed. Each issue presented for review shall be separately numbered in the statement. No issue not distinctly identified shall be argued by counsel, except upon request of the court, but the court may, at its option, notice a plain error not identified or distinctly specified.
[2] M.R.A.P. 4(a):

(a) Appeal and Cross-Appeals in Civil and Criminal Cases. Except as provided in Rules 4(d) and 4(e), in a civil and criminal case in which an appeal or cross-appeal is permitted by law as of right from a trial court to the Supreme Court, the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from. If a notice of appeal is mistakenly filed in the Supreme Court, the clerk of the Supreme Court shall note on it the date on which it was received and transmit it to the clerk of the trial court and it shall be deemed filed in the trial court on the date so noted.
[3] Mississippi Code Annotated Section 93-5-23 states, "When a divorce shall be decreed from the bonds of matrimony, the court may, in its discretion, having regard to the circumstances of the parties and the nature of the case, as may seem equitable and just, make all orders touching the care, custody and maintenance of the children of the marriage, and also touching the maintenance and alimony of the wife or the husband, or any allowance to be made to her or him, and shall, if need be, require bond, sureties or other guarantee for the payment of the sum so allowed. Orders touching on the custody of the children of the marriage shall be made in accordance with the provisions of Section 93-5-24. The court may afterwards, on petition, change the decree, and make from time to time such new decrees as the case may require. However, where proof shows that both parents have separate incomes or estates, the court may require that each parent contribute to the support and maintenance of the children of the marriage in proportion to the relative financial ability of each. In the event a legally responsible parent has health insurance available to him or her through an employer or organization that may extend benefits to the dependents of such parent, any order of support issued against such parent may require him or her to exercise the option of additional coverage in favor of such children as he or she is legally responsible to support."