815 So.2d 480 (2002)
Roy Donald DUNCAN, Appellant,
v.
Helen Lynn DUNCAN, Appellee.
No. 2001-CA-00109-COA.
Court of Appeals of Mississippi.
April 30, 2002.
*481 Joseph R. Meadows, Gulfport, for Appellant.
William T. Reed, Pascagoula, for Appellee.
Before McMILLIN, C.J., BRIDGES, and IRVING, JJ.
*482 McMILLIN, C.J., for the court.
¶ 1. Helen Duncan was granted a divorce from her husband, Roy Duncan, on the ground of uncondoned adultery. After determining that Mrs. Duncan was entitled to a divorce on that statutory ground, the chancellor proceeded to the necessary financial considerations involved in the dissolution of a marriage. Dr. Duncan, dissatisfied with the financial terms of the divorce judgment, has appealed to this Court claiming that the chancellor abused his discretion by being unduly generous to Mrs. Duncan. We find that the issues raised by Dr. Duncan in this appeal have merit and, for that reason, we reverse the judgment of divorce solely as it relates to financial matters and remand for further proceedings consistent with the terms of this opinion.

I.

Facts
¶ 2. Dr. and Mrs. Duncan were married in 1966. In the early years of the marriage, Mrs. Duncan worked as a school teacher while her husband was enrolled in medical school. Mrs. Duncan continued to teach until the couple adopted a child, after which she devoted her attention to managing the family until the time the parties separated in 1997. She then obtained re-certification as a secondary school teacher and found employment in that field earning approximately $1,180 per month, net after taxes and other required deductions. All the children of the parties were emancipated at the time of the divorce proceeding. The evidence showed that Dr. Duncan was a private medical practitioner whose clinic had, for several years, averaged a net operating income in the range of $11,000 per month after deduction of business expenses associated with the clinic operation but before consideration of Dr. Duncan's personal income tax liability.
¶ 3. The parties owned a residence having an appraised value of $420,000. There were two outstanding mortgage loans on the house, one having a balance of approximately $150,000 and the other having a balance of approximately $3,000. Upkeep and maintenance on the home was estimated in the range of $1,000 per month, and insurance and taxes came to approximately $500 per month.
¶ 4. Dr. Duncan had a retirement fund with a balance of $675,070 at the time of separation that had grown in value to approximately $800,000 at the time of trial. Mrs. Duncan had various retirement and savings accounts having an aggregate value of approximately $59,000.
¶ 5. The chancellor awarded Mrs. Duncan periodic alimony of $4,910 per month. In addition, she received exclusive use and possession of the marital home and Dr. Duncan was ordered to pay one half of all mortgage payments, taxes, insurance, and upkeep on the home. Mrs. Duncan received title to substantially all of the contents of the home except for several items listed in the judgment.
¶ 6. After originally ordering Dr. Duncan to provide health insurance coverage for Mrs. Duncan, the chancellor subsequently amended his decision when it was pointed out that Mrs. Duncan had other insurance coverage available. Under the amended judgment, Dr. Duncan was given the option of canceling the coverage he was then providing for Mrs. Duncan on the condition that he assume responsibility for any health costs not covered by Mrs. Duncan's insurance that would have been covered by the policy provided by Dr. Duncan. Additionally, the judgment ordered that, if at any time in the future Mrs. Duncan should lose her health insurance coverage, Dr. Duncan would be responsible *483 for re-instituting coverage equivalent to that in effect at the time of divorce or, in the event such insurance could not be obtained, he was ordered to assume responsibility for all of Mrs. Duncan's medical bills.

II.

Periodic Alimony
¶ 7. Dr. Duncan contends on appeal that, when considered in their totality, the sum of his monthly obligations to his former wife are excessive to the extent that they demonstrate a manifest abuse of discretion on the part of the chancellor. In reviewing an award of alimony, this Court must recognize that the chancellor has substantial discretion in fashioning relief and our authority to disturb such an award must be based on the conclusion that the chancellor has abused that broad discretion. Wells v. Wells, 800 So.2d 1239, 1243(¶ 8) (Miss.Ct.App.2001). The Mississippi Supreme Court has, to some extent, placed some limits on the chancellor's discretion in this field by itemizing a list of twelve factors that the chancellor must consider in determining whether periodic alimony is appropriate and, if so, what amounts are appropriate. Hammonds v. Hammonds, 597 So.2d 653, 655 (Miss.1992).
¶ 8. We do not think that the chancellor erred in his determination that periodic alimony was appropriate since, even after the chancellor's efforts to equitably divide the assets accumulated during the marriage, there does not appear to be any chance that Mrs. Duncan can become economically self-sufficient in the sense of being able to maintain a standard of living reasonably commensurate with that the couple enjoyed during the course of their lengthy marriage.
¶ 9. Nevertheless, we do note that, besides the fixed periodic sum of $4,910 per month, the chancellor further ordered Dr. Duncan to pay debts and expenses associated with the former marital dwelling that would, from the proof, total somewhere in the range of $1,300 per month. Additionally, Dr. Duncan was saddled by the chancellor with an open-ended permanent obligation regarding Mrs. Duncan's future health needs that would appear from the proof to increase his monthly obligation by a minimum of $500 per month up to a maximum impossible to calculate. Depending upon future events, many of which are beyond Dr. Duncan's control, his duty under the judgment has no upper limits since it is an obligation to pay Mrs. Duncan's future medical expenses no matter what they might be.
¶ 10. The proof showed that Dr. Duncan, at the age of fifty-five years, was beginning to experience some health problems that he felt would tend to limit his ability to expand his income beyond that already achieved in his medical career. There was nothing in the record countering this evidence suggesting his prospects for improved income from his practice were likely. With that in mind, we find it appropriate to assess the reasonableness of the chancellor's awards in the nature of periodic support for Mrs. Duncan on the assumption that Dr. Duncan's income will remain at approximately $11,000 per month before his individual income tax liability is considered.
¶ 11. The chancellor's finding regarding the recurring expenses of the parties consisted of a reference to financial disclosure forms each party had filed in the records of the case. The chancellor made no explicit finding that he considered these reported expenses reasonable; however, in this appeal, Dr. Duncan makes no claim that Mrs. Duncan's expenses are exorbitant or unreasonable, except to suggest that it is not practical for her to remain in *484 the family dwelling when it could be sold and she could use her share of the proceeds to obtain more suitable living accommodations.
¶ 12. When taken in the aggregate, Dr. Duncan's monthly obligation under the divorce judgment can reasonably be expected to reach approximately $6,700 per month. Even this figure does not take into account the expense to Dr. Duncan of maintaining life insurance coverage on himself with Mrs. Duncan as the beneficiary, nor does it take into consideration Dr. Duncan's contingent, but potentially devastating, obligations regarding Mrs. Duncan's future health care costs.
¶ 13. Even when the fact of Dr. Duncan's contribution to the failure of this marriage is considered, we conclude that a periodic alimony award that, in combination, commits him to pay out $6,700 of his anticipated monthly pre-tax income of $11,000 is excessive. The problem is compounded when his potentially unlimited obligation regarding Mrs. Duncan's future medical expenses is considered. This Court recently considered a similar situation and determined that, though it was within the discretion of the chancellor to require a divorcing spouse to provide health insurance for the other, an openended provision requiring the same spouse to pay all health costs not covered by the insurance amounted to a prospective modification of the amount of alimony that did not take into account the elements of evidence necessary to obtain such a modification, the primary factor required by law but omitted from such an arrangement being the need for a determination of the obligated spouse's ability to meet the new and higher support amount. Tillman v. Tillman, 791 So.2d 285, 288(¶ 10) (Miss.Ct. App.2001).
¶ 14. Thus, we conclude that the various periodic obligations of support imposed on Dr. Duncan, when considered in their totality, are so excessive as to prevent Dr. Duncan from reasonably providing for his own future reasonable living expenses and, thus, amount to an abuse of discretion. Tilley v. Tilley, 610 So.2d 348, 353-54 (Miss.1992). We further find that any provision regarding provision of health care extending beyond the creation of an obligation to provide health insurance under terms where the costs of coverage are known and can, therefore, be assessed as to reasonableness is an abuse of discretion as an attempt to provide for future automatic modifications of the level of support without regard to the necessary factors that must support a bid to modify alimony. Tillman v. Tillman, 791 So.2d 285, 288(¶ 10) (Miss.Ct.App.2001).

III.

The Equitable Division of Marital Assets
¶ 15. The chancellor essentially made an even division of all assets accumulated by the parties during the marriage (except for the provisions he made as to the marital domicile). Taking into account the duration of the marriage and the fact that Mrs. Duncan contributed to the marriage both as the primary financial support during the early days of Dr. Duncan's schooling and that she contributed to the family by devoting herself to the upbringing of the children and to the operation of the household, we cannot necessarily conclude that this equal division of assets was so unfair as to constitute an abuse of discretion. Chamblee v. Chamblee, 637 So.2d 850, 863-64 (Miss.1994).
¶ 16. Nevertheless, the Mississippi Supreme Court has observed that the entire range of awards regarding finances must, in the final analysis, be considered in order to arrive at the determination that the chancellor's judgment is fair and equitable *485 to both parties. Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss.1994). The court has further said that, as a practical matter, as one obligation increases, the ability of the obligor to meet some other obligation necessarily recedes. Id. Because we conclude that it is necessary to reverse and remand for consideration of a more equitable level of periodic alimony and because any changes in that award will have an impact on other aspects of the chancellor's decision, we conclude that it would be proper to simply vacate all aspects of the judgment relating to financial matters and remand for consideration of a financial award that will equitably provide for Mrs. Duncan while not being so harsh as to Dr. Duncan as to substantially limit his ability to continue in a reasonably financially-secure circumstance.

IV.

Attorneys Fees
¶ 17. The chancellor awarded Mrs. Duncan $5,000 in attorney's fees without any finding that she was unable to defray her costs of representation from her own assets. This is one of the fundamental prerequisites of an award of attorneys fees in a divorce action. Harrell v. Harrell, 231 So.2d 793, 797 (Miss.1970). The evidence demonstrates Mrs. Duncan's access to fairly substantial sums of cash in the form of savings and checking balances and there is no proof indicating that these funds are otherwise committed so as to impose a substantial hardship on her were she required to pay her own cost of representation from assets available to her immediately upon the conclusion of this proceeding.
¶ 18. In that light, we conclude that the award of attorney's fees was an abuse of discretion and we reverse that award. This ruling is not intended to affect, in any way, the chancellor's authority to consider attorney's fees on remand should the proper situation for their award be shown by the evidence to exist.
¶ 19. THE JUDGMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, CHANDLER AND BRANTLEY, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.