864 So.2d 970 (2003)
Danny R. FRANKLIN, Appellant/Cross-Appellee,
v.
Carolene G. FRANKLIN, Appellee/Cross-Appellant.
No. 2001-CA-01987-COA.
Court of Appeals of Mississippi.
November 25, 2003.
*973 William M. Beasley, Jak McGee Smith, Tupelo, Rebecca L. Hawkins, Jackson, attorneys for appellant.
T. Swayze Alford, attorney for appellee.
Before McMILLIN, C.J., BRIDGES and THOMAS, JJ.
THOMAS, J., for the Court.
¶ 1. Following entry of an order and judgment of divorce by Lee County Chancellor John C. Ross on January 21, 2001, both Danny and Carolene Franklin appeal. Danny, plaintiff below and appellant here, assigns the following errors by the chancellor:
I. THE AMOUNT OF PERIODIC ALIMONY AWARDED TO CAROLENE FRANKLIN IS EXCESSIVE AND AN ABUSE OF THE CHANCELLOR'S DISCRETION.
II. THE CHANCELLOR'S AWARD OF TEMPORARY ALIMONY ARREARAGE IS ERRONEOUS, AN ABUSE OF DISCRETION, AND SHOULD BE REVERSED AND RENDERED.
III. THE CHANCELLOR'S FINDINGS AND AWARD REGARDING PAST DUE MEDICAL BILLS ARE CLEARLY ERRONEOUS.
IV. THE CHANCELLOR ERRONEOUSLY AWARDED CUSTODY OF THE FOUR MINOR CHILDREN TO CAROLENE FRANKLIN WITHOUT CONSIDERING THE ALBRIGHT FACTORS.
V. THE CHANCELLOR'S AWARD OF ATTORNEY'S FEES TO CAROLENE WAS ERRONEOUS.
¶ 2. Carolene, defendant below and cross-appellant here, appeals two issues:
I. WHETHER CHANCELLOR JOHN ROSS ERRED WHEN HE ENTERED THE ORDER GRANTING NEW TRIAL.
II. ASSUMING JUDGE ROSS HAD AUTHORITY AND A SUFFICIENT BASIS TO GRANT A NEW TRIAL, WHETHER JUDGE ROSS ERRED IN DIVIDING THE MARITAL ASSETS WHEN HE AWARDED 65% TO DAN AND 35% TO CAROLENE AND IN ALLOWING DAN TO PAY THE MAJORITY OF CAROLENE'S SHARE TO HER OVER A PERIOD OF 180 MONTHS.
¶ 3. We affirm in part and finding error, reverse and remand in part to the chancery court for further action consistent with this opinion.

FACTS
¶ 4. The divorce case of Carolene and Danny Franklin has been pending before the courts of this State for nearly eleven years. The recitation of the facts and procedural history is necessarily lengthy.
¶ 5. Danny and Carolene were married in October, 1980. Four daughters were born to the marriage: Jessica in 1984, Candace in 1986, Whitney in 1988, and Jenna in 1993. Although neither party brought significant assets to the marriage, the couple soon began a business, Franklin Collections Services. This business became successful enough that Carolene could eventually cease working there regularly to devote the bulk of her time to child rearing and still allow the family to live comfortably.
*974 ¶ 6. Sometime around Christmas 1992, Danny left the marital home and filed for divorce on January 21, 1993, claiming irreconcilable differences. Carolene filed a petition for separate maintenance which resulted, eventually, in the entry of a temporary decree by Chancellor Timothy Ervin, allowing Carolene use and possession of the marital home, custody of all four children and requiring Danny to pay $1,200 per month in child support and $3,400 per month alimony.
¶ 7. In the interim, Danny filed an amended complaint alleging habitual cruel and inhuman treatment, or alternatively, irreconcilable differences. Danny also sought custody of the children. Carolene filed a counter-complaint for divorce in October 1995, asserting adultery and habitual cruel and inhuman treatment by Danny. After years of wrangling, the matter eventually came on for hearing before Chancellor Ervin in April 1998. After three days of testimony, Ervin took the matter under advisement.
¶ 8. In December 1998, Ervin notified the supreme court that he had not yet rendered a decision in the Franklin case and would be unable to do so before leaving the bench at the end of the year. The supreme court issued an order on January 22, 1999, appointing Ervin as special chancellor in the case and ordered him to render a judgment.
¶ 9. Danny then filed a notice of dismissal with the Lee County Chancery Court. He argued that, under the Rules of Appellate Procedure, the case was automatically dismissed when the chancellor failed to render a decision for more than six months and forty-five days and neither party had sought mandamus. Danny also filed a motion to reconsider the special chancellor appointment with the supreme court based upon the same ground. This was denied. Chancellor Ervin rendered a memorandum opinion on April 12, 1999. Carolene was granted the divorce on the ground of adultery. Carolene also received custody of all four daughters, child support in the amount of $1200 per month, alimony in the amount of $3500 per month and fifty per cent of the marital estate. Chancellor Ervin, however, never entered a final judgment of divorce.
¶ 10. Danny filed a number of motions pertaining to the order: a motion to reconsider, motion for new trial and motion challenging Ervin's authority to enter the order at all. Ervin declined to rule on any of these motions, finding his authority in the case ended upon issuance of the memorandum opinion. The new chancellor, John Ross, entered a final judgment in February 2000 which adopted the findings of Ervin's memorandum opinion. Danny filed another motion for new trial which Chancellor Ross then granted.
¶ 11. The second hearing was held in November 2000. Chancellor Ross issued his opinion and judgment in January 2001. Carolene was again granted a divorce on the ground of adultery and custody of all four children with child support of $1050 per month. The chancellor valued the marital estate, comprised primarily of various pieces of real property, a cattle and farming operation and the collections business, at $1,037,290. He allocated thirty-five percent of this total, $363,051.50, to Carolene and the remaining sixty-five percent, $674,238.50, to Danny.
¶ 12. The chancellor also found Danny in arrears for alimony ordered under the 1994 temporary decree in the amount of $74,800. After subtracting the value of the property awarded to Carolene outright, the chancellor found Danny owed to Carolene as her portion of the marital estate $264,551.50. To this total he added the alimony arrearage for a total of $339,351.50 due Carolene to be paid in 180 *975 monthly installments of $3,132.77. Carolene was granted a lien on Danny's property to secure this debt. Finally, Carolene was granted alimony in the amount of $2,915 per month.

ANALYSIS
¶ 13. For clarity and simplicity, we will combine some issues of the appeal and cross-appeal for discussion and approach them out of the order in which the parties have presented them.

A. Carolene's Cross-Appeal

1. New Trial
¶ 14. Carolene's first assignment of error on cross-appeal is that Chancellor Ross erred when he granted Danny's motion for a new trial because he lacked the authority to do so. Danny answers that Carolene failed to designate the March 2000 order in her notice of appeal and she is therefor barred from raising the issue.
¶ 15. An order granting a motion for a new trial is not a final judgment which can be appealed as of right. Maxwell v. Illinois Cent. Gulf R.R., 513 So.2d 901, 908 (Miss.1987). The only avenue for review of a decision on a motion for new trial alone is via an interlocutory appeal. Bowman v. Rutledge, 369 So.2d 768, 769 (Miss.1979). The motion for new trial, whether granted or denied, is but one portion of the case as a whole which may, if proper objection is made, be appealed as an assignment of error following the entry of a final judgment from the new trial.
¶ 16. In arguing the chancellor lacked authority to grant the new trial, Carolene relies upon the supreme court decision of Love v. Barnett, 611 So.2d 205 (Miss.1992). In Love, the chancellor who heard the matter and issued a bench ruling died before final judgment could be rendered. The new chancellor granted a requested modification without benefit of a hearing and without access to the record or transcript of the first hearing. In reversing the modification, the supreme court said the chancellor who heard the matter was best situated to fashion an appropriate remedy. Id. at 208. Without a hearing, introduction of new evidence, review of the previous hearing or agreement of the parties, the modification lacked any evidentiary support and was therefore arbitrary and capricious. Id.
¶ 17. The case before us also involves two chancellors and a memorandum opinion not yet made into a final judgment but there the resemblance ends. Chancellor Ross did not modify Chancellor Ervin's memorandum opinion. On the contrary, Ross adopted Ervin's memorandum opinion in its entirety as a final judgment in the matter. Presumably that final judgment would have remained in place had Danny not then sought a new trial. Love would be applicable if Danny had sought to alter a term of the judgment without giving Carolene an opportunity to argue against it. Because he sought a new trial instead, Carolene had a full opportunity to be heard and present evidence.
¶ 18. Whether or not to grant a motion for a new trial is a matter of discretion vested in the chancellor. M.R.C.P. 59(a). One reason for granting a new trial would be that an injustice would result from allowing the judgment to stand. Roebuck v. Massey, 741 So.2d 375, 387-88 (¶ 38) (Miss.Ct.App.1999). That was the stated reason for the grant of a new trial and Carolene offers us no argument why this constituted an abuse of discretion.

2. Equitable distribution
¶ 19. Carolene's second issue on appeal attacks the validity of the chancellor's distribution of the marital assets. *976 She argues that by awarding her only thirty-five percent of the marital assets, the chancellor failed to properly value her contributions as both a homemaker and an integral part of getting Franklin Collection Services up and running. She claims an even split is due her in light of her contributions.
¶ 20. Mississippi is an equitable distribution state, not a community property one. Owen v. Owen, 798 So.2d 394, 399 (¶ 14) (Miss.2001). "Equitable" does not mean "equal." Id. The division of marital assets is a matter of discretion for the chancellor, bearing in mind the equities of the circumstances and the relevant facts and considerations. Davis v. Davis, 638 So.2d 1288, 1293 (Miss.1994). The factors that must be considered, the Ferguson factors, are familiar and well-known to the courts of this State. Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994). Failure to consider these factors and make specific findings on the record may result in reversible error. Owen, 798 So.2d at 399 (¶ 13).
¶ 21. In this case, Chancellor Ross did consider each factor and make on-the-record findings. He noted the contribution Carolene made as first a full-time worker at Franklin Collections Service and then as a full-time homemaker. These findings do not support Carolene's contention that her contributions were undervalued, nor does the division itself.
¶ 22. While Carolene received less than half as an absolute number, what she did receivea house, two vehicles and a cash settlementwere debt free. The house is unencumbered by a mortgage and no money is owed on either of the vehicles. None of the marital debt was assigned to Carolene, and she was granted a lien on Danny's property to assure her share of the marital estate. What Danny retained was the debt and the means with which to secure his continued payments to Carolene of that which he owes her.
¶ 23. In light of what each party received, we cannot say the chancellor abused his discretion. The equitable distribution is affirmed.

B. Danny's Appeal

1. Appointment of special chancellor
¶ 24. Danny has vigorously opposed the authority of former Chancellor Ervin, or any other judge, to rule on the original divorce petition since he was noticed of Ervin's appointment as special chancellor in January 1999. He continues to press this argument on appeal. Danny contends the case stood automatically dismissedand all previously entered orders dissolvedas of December 15, 1998.
¶ 25. For this proposition, Danny relies upon Mississippi Rule of Appellate Procedure 15. This rule has since been amended but the version in effect at all times relevant to this case read:
(a) When Mandamus Required. If a trial judge in a civil case fails to render a decision on a motion or request for relief which would be dispositive of all the claims or the rights and liabilities of all the parties, within six (6) months after taking such a motion or request under advisement, any party in the case may apply to the Supreme Court for a writ of mandamus to compel the trial judge to render a decision on the matter taken under advisement or deferred. Application for a writ of mandamus must ... be made within 45 days after the expiration of six (6) months from the date the motion or request was taken under advisement by the trial judge.
...
(c) Effect of Failure to Seek Mandamus. If a party who filed the original *977 complaint fails to apply for a writ of mandamus within the time prescribed, the complaint shall stand dismissed without prejudice, except upon a showing that the failure to timely apply resulted from excusable neglect and that manifest injustice will result from the dismissal. If a party who has filed a counter-claim or a cross-claim fails to apply for a writ of mandamus within the time prescribed, likewise, except upon a showing that the failure to timely apply resulted from excusable neglect and that manifest injustice will result from the dismissal, the counterclaim, or cross-claim shall stand dismissed without prejudice.
¶ 26. Both parties point us to two cases which interpreted the then-existing Rule 15, Field v. Lamar, 822 So.2d 893 (Miss. 2002), and Town of Lucedale v. George County Nursing Home, Inc., 482 So.2d 223 (Miss.1986). Briefs to this court spend much discussion on how the facts of those two cases either do or do not apply to the Franklins' situation. Whatever the factual distinctions between Field and Lucedale, these two cases make perfectly clear the purpose of Rule 15.[1] That purpose was to ensure prompt resolutions for the parties and promotion of judicial efficiency and economy. Lucedale, 482 So.2d at 225.
¶ 27. A literal reading of Rule 15 does support Danny's contention that the divorce petition stood automatically dismissed as of December 15, 1998. That, however, does not end the matter. Another rule allows either the Mississippi Supreme Court or the Mississippi Court of Appeals to suspend the application of any of its rules upon its own motion in the interest of expediting decision or other good cause shown. M.R.A.P. 2(c).
¶ 28. In issuing its order appointing the special chancellor, the supreme court, in effect, expressed its intention to suspend the application of Rule 15 in this case. Why that court would find suspension warranted is readily apparent. At that time, the case had been in progress for six years. A hearing had been held and evidence presented. The only thing missing was a judgment. Although by that point the phrase "expediting decision" was inappropos to the point of ludicrousness, the clear intent of the supreme court was to bring an end to this divorce case.
¶ 29. This is not a case in which Danny sought to assert the privileges of Rule 15 at some earlier date, arranged his life accordingly and was then surprised to find the case still alive in 1999 when the chancellor issued his memorandum opinion. If those were the facts with which we were presented, we may have considered the matter differently. Field, 822 So.2d at 898. But that is not our case. Danny did not file his notice of dismissal until after learning of the special chancellor's appointment. He never ceased to pay the child support ordered in the 1994 temporary decree and only ceased paying the entirety of the alimony in approximately March of 1999, the same month he received notice the supreme court had denied his motion to reconsider the special appointment and, presumably, upon advice of counsel. Danny never acted like an individual who thought the temporary decree had dissolved until he knew for a fact that it had not. Rule 15 cannot now help him.
¶ 30. Danny raises this argument at several points on appeal. However, we do not find that it need be addressed elsewhere in this opinion.

*978 2. Calculation of alimony arrearage

¶ 31. Under the terms of the temporary decree, Danny was required to pay Carolene $3400 per month in alimony. The chancellor found that Danny had stopped paying Carolene alimony in March 1999. He then calculated an arrearage of $74,800, or $3400 for twenty-two months. No credit was given for any payments during that twenty-two months.
¶ 32. Mississippi has allowed a payor spouse alimony credit for amounts paid to or on behalf of the payee spouse even though those payments have not taken the traditional form of a personal check marked "alimony." See Spalding v. Spalding, 691 So.2d 435, 439 (Miss.1997) (payments made directly to payee by Social Security Administration deriving from payor's disability benefits to be credited against alimony); McHann v. McHann, 383 So.2d 823, 825 (Miss.1980) (payor spouse's payment of payee's household utilities, home repairs, auto insurance and taxes to be credited against outstanding alimony).
¶ 33. A fair reading of these cases produces the rationale for allowing these credits: alimony is income to the payee spouse to meet reasonable needs. Where those needs are met directly by the payor spouse, the payee is not burdened with them. Payments directly to vendors on behalf of the payee may be considered substitute income.
¶ 34. The information supplied by Danny himself clearly shows he has failed to make all of the mandated alimony payments. His banking information shows the last full alimony payment was made in February 1999. Danny does not actually dispute that he is in arrears, only the amount. Carolene admits to receiving various benefits from Danny after he stopped submitting checks marked "alimony." However, she considers those to have been gratuitous actions on his part. For support of this proposition, Carolene relies upon MacDonald v. MacDonald, 698 So.2d 1079 (Miss.1997). That case holds that a payor spouse is not entitled to a credit against future obligations for past payments which exceeded the court-imposed obligation. Id. at 1086-87 (¶ 39).
¶ 35. The difficulty in Carolene's argument is readily apparent. She argues that Danny has simultaneously failed to pay alimony and made gratuitous overpayments. That argument is untenable. Danny is entitled to some credit for the payments he has made to or on behalf of Carolene since February 1999. We must remand to the chancery court with instructions to classify each of the payments made and determine whether or not they were court-ordered expenses, such as medical or dental expenses, to which Danny would not be entitled to a credit, and those which were not specifically ordered but derived to Carolene's benefit, such as payment of her household utilities.
¶ 36. We caution the lower court that child support payments have not been made an issue in this case. No expenses allocated specifically to the children, such as clothing, school activities or otherwise, may be considered as an off-set to alimony. Danny is not entitled to credit on any child-related expenses, regardless of how much he has spent.

3. Periodic alimony
¶ 37. Danny next argues the amount of periodic alimony granted Carolene is excessive and the aggregate of the obligations imposed upon him exceed his net monthly income, creating a per se abuse of discretion by the chancellor. Carolene answers that Danny's monthly income is greater than the amount he documents and proof of that is shown by the *979 amounts he has paid in the past in alimony, child support and other expenses.
¶ 38. In addition to the $3132.77 Danny was ordered to pay monthly for Carolene's share of the marital estate and the alimony arrearage, Carolene was granted alimony in the amount of $2915 per month. The chancellor arrived at this amount by calculating Carolene's reasonable monthly expenses and subtracting the ordered child support with the balance, $2915, to be paid as periodic alimony.
¶ 39. Whether or not to award alimony and in what amount is a matter left to the discretion of the chancellor. Duncan v. Duncan, 815 So.2d 480, 483(¶ 7) (Miss.Ct.App.2002). We will disturb a chancellor's judgment only upon a showing of an abuse of that discretion. Id. The chancellor's discretion, however, is not absolute. There are several factors that must be considered in determining the propriety of an alimony award:
(1) the income and expenses of the parties;
(2) the health and earning capacity of the parties;
(3) the needs of each party;
(4) the obligations and assets of each party;
(5) the length of the marriage;
(6) the presence or absence of minor children in the home;
(7) the age of the parties;
(8) the standard of living of the parties;
(9) the tax consequences of spousal support;
(10) fault or misconduct;
(11) wasteful dissipation of assets;
(12) any other factor bearing on justness and equity.
Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993).
¶ 40. Conceptually, an award of periodic alimony flows from the obligation of a husband to support his wife in the manner to which she has become accustomed to the extent he is able do so. Watson v. Watson, 724 So.2d 350, 355 (¶ 17) (Miss.1998). Alimony is not a prize, though, to which a wife is indefinitely entitled simply by virtue of once having been married to her husband. Brooks v. Brooks, 757 So.2d 301, 305 (¶ 14) (Miss.Ct. App.1999). Thus we examine the Armstrong factors, balancing what the wife reasonably needs to as closely maintain her standard of living with her former husband's ability to pay and his right to also maintain a decent standard of living. Brooks v. Brooks, 652 So.2d 1113, 1122 (Miss.1995).
¶ 41. Chancellor Ross, although listing the proper factors, made no findings of fact in this portion of his opinion other than to state that in light of Danny's substantial income and Carolene's lack of income, alimony was appropriate. Many of these factors, however, are similar or identical to those considered in making an equitable distribution of marital property. In that section of his opinion, Chancellor Ross made findings which are equally applicable here.
¶ 42. In sum, the chancellor found that both parties were then in their early to mid forties and in good health; Danny worked but Carolene did not although there was no reason other than the children at home why she did not; Danny had committed uncondoned adultery during the course of the marriage of twenty years. The chancellor was unable to determine Carolene's needs and expenses because of her failure to submit the necessary financial information so he made reasonable assumptions for her. The assets and obligations of the parties were thoroughly discussed *980 in the section dealing with the marital estate.
¶ 43. In addition to these factual findings, the record establishes that Carolene has suffered a substantial loss in her standard of living while Danny's only appears to have improved. Carolene had been out of the work force for some years, and both parties appear to spend indiscriminately.
¶ 44. Although the chancellor made no specific findings in this portion of the judgment, we find sufficient evidence in the record to support the alimony award, subject to the remaining portion of our opinion on this issue.
¶ 45. Danny also complains that the chancellor ordered him to pay almost $8,000 per month in alimony and child support from an adjusted monthly gross income of only $4370 per month. Carolene argues Danny's income is actually much higher than that.
¶ 46. Ordering a spouse to make payments beyond his means has been held to be reversible error. Tilley v. Tilley, 610 So.2d 348, 354 (Miss.1992). However, we are not convinced that the payments ordered of Danny exceed his means.
¶ 47. The financial information provided by both Danny and Carolene has been incomplete or misleading. Danny claims to earn only $4300 per month but has also managed to spend thousands of dollars in furnishing his new country club home, pay for his girlfriends' charge card expenses and make very generous charitable contributions. His monthly income and expenses report submitted as an exhibit on this appeal includes as a monthly expense $898.64 in property taxes on his home. We find that figure rather incredible. At the rate Danny Franklin claims, his annual property taxes on a private residence with an appraised value of $230,000 would be more than $10,000 per year. That seems highly unlikely.
¶ 48. Danny also testified that a great many of his expenses are paid for by the collections business then later charged to him as income. Most of these payments were not reflected on Danny's income and expense disclosures. Danny went to great lengths to show how poorly his businesses were doing but he also received a tax refund of over $100,000 for the deductions he took on those losses and which he intended to hide from Carolene.
¶ 49. For her part, Carolene failed to provide any financial information during discovery. She only did so in the middle of the hearing at the court's order. The information that was submitted was incomplete, illegible or unrealistic. She attempted to include expenses for the children as part of her monthly expenses when those expenses are to be provided for by child support. Id. at 353.
¶ 50. Neither party has assisted the courts in making a fair determination of this issue. Chancellor Ervin found that Danny's income was substantially higher than he would admit but Chancellor Ross, following the second hearing, did not. Such a conclusion might be presumed but given the misleading or inaccurate nature of the information provided, we cannot find a basis for making such a presumption. It may simply be that Chancellor Ross failed to consider the aggregate amount of the payments he ordered Danny to make.
¶ 51. We must remand the question to the trial court for further evidence on the actual monthly income which may be attributed to Danny. The value of what he receives from the payment of his expenses by the business are to be included in that calculation, as is the value of any tax refunds to which he may be entitled. We also order Carolene to provide the financial data required by the court, in full, *981 accurately and without consideration of the expenses covered by child support. Once this information has been provided, the chancellor is to determine whether the periodic alimony of $2915 per month is financially feasible. If it is, that award is to stand. If it is not, the chancellor is to make a new reasonable award.

4. Past due medical expenses
¶ 52. In the temporary decree, Danny was ordered to maintain health insurance on Carolene and the girls as well as pay any medical, dental, doctor and drug bills. Carolene does not claim that Danny has failed to maintain the necessary insurance, but that he has failed to pay or reimburse her for medical expenses left unpaid by the insurance.
¶ 53. Carolene presented evidence of past due medical expenses after payment of insurance benefits in the amount of $10,221.39. She also testified that another $2344.68 worth of medical expenses had been incurred but that insurance payments had not yet been posted. The chancellor granted Carolene $12,655.07 in medical expenses, an amount which obviously included the $2344.68 to which insurance had not yet been applied. This was error.
¶ 54. Danny was not required to duplicate payments made by insurance, only to pay the expenses not covered by insurance. Until such time as the question of what portion of those bills insurance would cover was settled, the amount Danny was required to pay could not be determined. As of the time of trial, Carolene was due only $10,221.39.

5. Child custody
¶ 55. The chancellor awarded custody of all four daughters to Carolene despite the fact the two oldest girls were living with Danny at the time and both expressed the desire to remain with their father. The reason given for the custody decision was the chancellor's finding that siblings should be raised together and Danny had sought custody of only the two oldest girls. As a matter of factual clarification, we note Danny's amended complaint seeking custody of all four daughters.
¶ 56. The law in Mississippi regarding custody determinations is extremely well settled. In making that decision, the chancellor is to take into consideration the well-known factors expressed in Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983):
(1) age, health and sex of the child;
(2) a determination of the parent that has had the continuity of care prior to the separation;
(3) which has the best parenting skills and which has the willingness and capacity to provide primary child care;
(4) the employment of the parent and responsibilities of that employment;
(5) physical and mental health and age of the parents;
(6) emotional ties of parent and child;
(7) moral fitness of the parents;
(8) the home, school and community record of the child;
(9) the preference of the child at the age sufficient to express a preference by law;
(10) stability of home environment and employment of each parent and other factors relevant to the parent-child relationship.
¶ 57. The chancellor in this case made no findings at all upon the Albright factors. They do not even appear to have been considered. Certainly they were not mentioned. Although we owe deference to the chancellor's findings, our job is to review the application of the Albright factors *982 in light of the factual findings. Powell v. Ayars, 792 So.2d 240, 244(¶ 9) (Miss.2001). This task is made infinitely more difficult when the lower court does not make specific findings. In the absence of specific findings, "we cannot affirm with confidence that the best decision has been reached." Id.
¶ 58. That is nowhere so true as in this case. As we were not present at the hearing, we can draw no valid conclusions as to which parent presents the most beneficial household for these girls. The chancellor made no findings for us to review. We must therefore remand this for consideration of all of the necessary factors and on-the-record factual findings.

6. Attorney's fees
¶ 59. The chancellor ordered Danny to pay Carolene's attorney's fees in the amount of $7500. Danny objects to this award on the ground that Carolene had the ability to pay them herself.
¶ 60. As with most other matters in a divorce, whether or not to grant one party attorney's fees is left to the discretion of the chancellor. McKee v. McKee, 418 So.2d 764, 767 (Miss.1982). The general rule, however, is that when a party has the means to pay his or her own attorney's fees, an award of fees is not appropriate. Brooks, 652 So.2d at 1120. A party's means and ability to pay must include awards of alimony and distribution of marital property. Id.
¶ 61. The chancellor made no finding that Carolene was unable to pay her own attorney. Had he done so, we would not have been able to affirm that finding. As discussed above, Carolene was allocated over $300,000 in this divorce. That she does not have the money actually in the bank does not alter the value of her assets and thus her ability to pay. The award of attorney's fees was in error.

CONCLUSION
¶ 62. We are loathe to reverse any part of this case. Eleven years is far too long for a divorce to linger in the courts. The record shows that each party has used the divorce to torture the other through lack of cooperation and many, many excuses to drag the other back into court for years before a hearing was ever had on the actual complaint. The children, who were in elementary school when this case began, are now of or swiftly approaching college age. More than a decade of legal battles between their parents have surely taken their toll upon the Franklin girls.
¶ 63. In the interest of finally bringing this case to a conclusion, we would affirm were we able but we cannot. This case must return to yet another chancellor for further action consistent with this opinion. We strongly encourage the parties to set aside their obvious animosity for each other so as to resolve the financial issues standing in the way of finally divorcing each other.
¶ 64. THE JUDGMENT OF THE LEE COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART ON DIRECT APPEAL. ON CROSS-APPEAL, THE JUDGMENT IS AFFIRMED. COSTS OF THIS APPEAL ARE TO BE SHARED EQUALLY BETWEEN THE PARTIES.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MYERS AND CHANDLER, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY. GRIFFIS, J., NOT PARTICIPATING.
NOTES
[1] At the time Lucedale was decided, the rule was embodied as Mississippi Supreme Court Rule 47.