# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-00519-SCT

*GARY ROLISON, MARTHA ROLISON, GM
LANDS, LLC AND ROLISON TIE AND TIMBER
COMPANY, INC.*

*v.*

*EDITH CAROLYN FRYAR, CALEB FRYAR, PINE
GROVE TRUCKING, INC., ROBERT A. FRYAR
AND OPERATORS INVESTMENT GROUP, P.A.*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/17/2015 |
| TRIAL JUDGE: | HON. ANDREW K. HOWORTH |
| TRIAL COURT ATTORNEYS: | JOHN WEDDLE |
| | ALAN LANCASTER |
| | REID STANFORD |
| | KIRK THARP |
| | SHANE McLAUGHLIN |
| | BRADLEY TRUETT GOLMAN |
| | STACEY WOODRUFF GOLMAN |
| COURT FROM WHICH APPEALED: | TIPPAH COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | BRADLEY TRUETT GOLMON |
| | STACEY WOODRUFF GOLMON |
| ATTORNEYS FOR APPELLEES: | MARVIN REID STANFORD |
| | ALAN D. LANCASTER |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 12/01/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., KITCHENS AND KING, JJ.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.　Following court-ordered mediation, spouses Gary Rolison and Martha Rolison and

Caleb Fryar and his father, Robert Allen Fryar, entered into a mediation settlement agreement

that resolved four lawsuits pending between the Rolisons and the Fryars.[1] After a bench trial, the Circuit Court of Tippah County found that the Rolisons had breached the settlement agreement, and the court entered a final judgment pursuant to Mississippi Rule of Civil Procedure 54(b) and postponed hearing the issue of damages. The Rolisons appealed from the final judgment but later dismissed the appeal voluntarily. After the trial on damages, the trial court awarded the Fryars $399,733.02 in damages, including lost profits and attorney fees.

¶2. The Rolisons appeal, arguing that their jury trial waiver was ineffective, the trial court's Rule 54(b) certification was erroneous, and the trial court erroneously denied a motion to intervene filed by two interested parties. Because the Rolisons dismissed their appeal from the Rule 54(b) final judgment, these issues are not before the Court. We do hold that the trial court committed no error by finding that the Rolisons had waived their right to a jury trial on damages and attorney fees. Further, we reject the Rolisons' challenges to the trial court's awards of damages and attorney fees because those awards were supported by substantial, credible evidence. Therefore, we affirm the judgment of the trial court.

**FACTS**

¶3. In 2006, the Rolisons purchased ninety-seven acres of land, known as the sawmill property, from the Fryars. After the purchase, disputes arose between the Rolisons and the Fryars concerning ownership of certain equipment and materials located on the property.

---

[1] This litigation involved appellants Gary Rolison, Martha Rolison, GM Lands, LLC, and Rolison Tie and Timber, Co., Inc. (the Rolisons), and appellees Edith Carolyn Fryar, Caleb Fryar, Pine Grove Trucking, Inc., Robert Allen Fryar, and Operators Investment Group, P.A (the Fryars).

Litigation ensued in the Circuit Court of Tippah County, which consolidated four of the cases for trial. On February 15, 2011, after all parties orally waived the right to a jury trial, the trial court ordered them to participate in mediation in an effort to resolve the four cases. The trial court further ordered that "all of the disputed property remain where is, as is" until the cases were resolved. The mediation occurred on March 2, 2011, and resulted in a settlement agreement signed by Gary Rolison, Martha Rolison, Robert Allen Fryar, and Caleb Fryar.

¶4.     The mediation settlement agreement provided that if the Fryars tendered $400,000 to the Rolisons, the Rolisons would convey the sawmill property to Caleb Fryar and execute a bill of sale for "all equipment and materials located on said property as is where is as of the date of this agreement on March 2, 2011."[2] Approximately one week later, the Rolisons notified the Fryars of their belief that the parties had not reached a valid agreement because there had been no meeting of the minds. On May 24, 2011, Caleb Fryar tendered a cashier's check in the amount of $400,000 to the Rolisons along with proposed settlement documents. The Rolisons returned the check and documents to the Fryars' attorney. Then, the Fryars filed a motion to enforce the settlement agreement, claiming reasonable damages incurred due to the delay, plus attorney fees.

¶5.     A bench trial on the Fryars' motion to enforce the settlement agreement occurred on October 21, 2011. The trial court heard testimony from Gary Rolison, Martha Rolison, Gary

----

[2] The mediation settlement agreement also provided that, in the event the Fryars did not tender $400,000 to the Rolisons on or before May 31, 2011, the Fryars would have the option to purchase a tract of land along the eastern boundary of the sawmill property for $40,000. Because the Fryars tendered $400,000 to the Rolisons before May 31, 2011, this option is not at issue in this case.

Wayne Rolison, Jr., Caleb Fryar, and the mediator, Larry Latham. The Rolisons argued that there had been either a mistake or no meeting of the minds on the specific equipment and materials that they were to transfer to Caleb Fryar for $400,000. The Fryars countered that there had been a meeting of the minds because the mediation settlement agreement stated that the Rolisons agreed to transfer "all" equipment and materials located on the sawmill property. The Rolisons also argued that some of the equipment and materials on the sawmill property was owned by their son, Gary Wayne Rolison, Jr., and by their logging operation, Rolison Logging/Timber Company Trust. Gary Wayne Rolison, Jr., and Rolison Logging/Timber Company Trust moved to intervene to protect their interests, arguing that, because they owned the property, it could not have been transferred to Caleb Fryar by the mediation settlement agreement. They requested a declaratory judgment that certain property rightfully belonged to Gary Wayne Rolison, Jr., or Rolison Logging/Timber Company Trust.

¶6.     The trial court denied the motion to intervene, finding that the motion was untimely because the litigation had been ongoing for three years with no attempt to intervene. Further, the trial court found that "the relationship between the Rolison[]s and the trust is so hopelessly intertwined that it does not function as a separate entity" and that the Rolisons had either express or implied authority to speak for the trust at all relevant times. The trial court also found that, based on the testimony of the witnesses and especially the mediator, the mediation settlement agreement had been the product of a meeting of the minds, and its terms were clear and unambiguous. The trial court also rejected the Rolisons' claim of a unilateral or mutual mistake. The issues of damages and attorney fees were postponed. Upon a finding

4

of no just reason for delay, the trial court directed the entry of a final judgment on its grant of the Fryars' motion to enforce the settlement agreement. *See* M.R.C.P. 54(b). At the conclusion of the bench trial, the trial court ordered a continuing injunction against the removal of anything from the property by anyone.

¶7.     After the Rolisons' motion for a new trial was denied on May 3, 2012, they filed a timely notice of appeal. On August 15, 2012, the parties entered into a second settlement agreement providing for the transfer of the sawmill property, but preserving the Fryars' claim for damages. Pursuant to this agreement, the Rolisons agreed to dismiss their pending appeal. On September 14, 2012, this Court granted the Rolisons' motion to dismiss their appeal, and the mandate issued on October 8, 2012.

¶8.     The issues of damages and attorney fees were tried on January 12, 2015. The Fryars presented evidence that damage had occurred to the sawmill property after the Rolisons had breached the mediation settlement agreement. They showed that an office located on the property had sustained water damage, a retaining wall had collapsed due to a water leak, the Rolisons had removed lumber and scrap metal from the property in violation of the court's order, motors had been removed and wires cut on the sawmill, and the scales had been damaged. The Fryars also showed that, because of a regulatory change during the breaching period, they had to modify the scales in a manner that would not have been required due to "grandfathering" if they had obtained the property when promised. The trial court found that the relevant dates for the breaching period were July 1, 2011, which was the undisputed date the Fryars would have begun sawmill operations, until September 14, 2012, the date the

5

Fryars would have been able to begin operations after they finally took possession, if the sawmill property had not been in a state of disrepair. The trial court awarded $231,960.32 for the costs to repair or replace missing or damaged items and $75,000 in lost profits. The trial court found that, because the Rolisons intentionally had disregarded the unambiguous terms of the mediation settlement agreement and had removed items from the sawmill property in violation of court orders, their conduct was so outrageous that it supported the Fryars' claim for attorney fees in the amount of $92,772.70.

## STANDARD OF REVIEW

¶9.    "A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor, and his findings will not be reversed on appeal where they are supported by substantial, credible, and reasonable evidence." ***Brewer Constr. Co., Inc. v. David Brewer, Inc.***, 940 So. 2d 921, 925 (Miss. 2006). This Court reviews questions of law *de novo*. ***Upchurch Plumbing, Inc. v. Greenwood Utils. Comm'n***, 964 So. 2d 1100, 1107 (Miss. 2007).

## DISCUSSION[3]

> I. WHETHER THE TRIAL COURT DENIED THE ROLISONS' CONSTITUTIONAL RIGHT TO A JURY TRIAL UNDER ARTICLE 3, SECTION 31, OF THE MISSISSIPPI CONSTITUTION.

¶10.    The Rolisons argue that they failed to effect a waiver of their state constitutional right to a jury trial. After the trial court consolidated the four cases, all parties orally waived their rights to a jury trial and consented to a bench trial. Then the trial court ordered mediation,

---

[3] For clarity, we have reordered the appellate issues.

which resulted in a settlement. After the Rolisons failed to perform their duties under the mediation settlement agreement, the trial court held a bench trial on the Fryars' motion to enforce the settlement agreement. No party requested a jury trial and all participated in the bench trial. At the conclusion, the trial court ruled from the bench that the Rolisons had breached the mediation settlement agreement and denied the motion to intervene by Rolison Logging/Timber Company Trust and Gary Wayne Rolison, Jr.

¶11. Approximately one month later, on November 18, 2011, the parties appeared in court to try the issues of damages and attorney fees. The Rolisons, now with new counsel, argued that they had not waived their right to a jury trial. The Rolisons contended that their oral jury trial waiver was ineffective because they had not filed a written waiver under Mississippi Rule of Civil Procedure 38(b). Alternatively, they argued that their oral waiver extended only to the four consolidated cases, and that a new cause of action for breach of contract had arisen upon their noncompliance with the mediation settlement agreement, for which they had not waived a jury trial. They argued that the Fryars should file an amended complaint adding a breach of contract action, and that the remaining issues of damages and attorney fees for breach of contract should be tried before a jury.

¶12. The trial court postponed the trial and ordered the parties to brief the jury trial waiver issue. On December 9, 2011, the trial court directed the entry of a final judgment under Rule 54(b) with respect to the matters that had been adjudicated. The Rolisons appealed from that judgment but later dismissed their appeal pursuant to their August 2012 settlement agreement with the Fryars. On July 15, 2013, the trial court entered an order finding that the Rolisons

7

had waived their right to a jury trial at the February 15, 2011, hearing "and by subsequent conduct, regarding the issue of the enforceability of the settlement agreement" and "on the present issue of any damages resulting from the breach of the settlement agreement."

¶13. On appeal, the Rolisons argue that their oral waiver of a jury trial was ineffective due to Rule 38(b)'s requirement of a written waiver of a jury trial. Rule 38 provides:

> (a) Right Preserved. The right of trial by jury as declared by the Constitution or any statute of the State of Mississippi shall be preserved to the parties inviolate.

> (b) Waiver of Jury Trial. Parties to an action may waive their rights to a jury trial by filing with the court a specific, written stipulation that the right has been waived and requesting that the action be tried by the court. The court may, in its discretion, require that the action be tried by a jury notwithstanding the stipulation of waiver.

M.R.C.P. 38(b). The Rolisons also argue that they never waived a jury trial on the Fryars' new cause of action for breach of contract, and that their conduct of orally waiving a jury trial and then fully trying the breach of contract issue cannot be construed as an effective waiver.

¶14. The Rolisons' argument that they were entitled to a jury trial on the issue of whether they breached the mediation settlement agreement is not properly before the Court. This is because, after the bench trial on that issue, the trial court entered a final judgment under Mississippi Rule of Civil Procedure 54(b). Rule 54(b) provides that "the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an expressed determination that there is no just reason for delay and upon an expressed direction for the entry of the judgment." M.R.C.P. 54(b). A party has thirty days after the date

8

a final judgment is entered to perfect an appeal. M.R.A.P. 4(a). If the Rolisons had wished to appeal the denial of a jury trial on the issue of whether the mediation settlement agreement was breached, they should have filed an appeal within thirty days after the entry of the Rule 54(b) final judgment. In fact, the Rolisons did perfect an appeal from the Rule 54(b) final judgment but later dismissed that appeal. Therefore, the issue of whether they were entitled to a jury trial on the matters resolved by the Rule 54(b) final judgment is not before this Court.[4]

¶15.   After the entry of the Rule 54(b) final judgment, the issues of damages and attorney fees remained before the trial court. Because the issue of whether the Rolisons were entitled to a jury trial solely on damages and attorney fees was not encompassed by the final judgment, it is properly before this Court. However, the issue is without merit. The Rolisons cite *Burnette v. Hartford Underwriters Ins. Co.*, 770 So. 2d 948, 951-52 (Miss. 2000), for the proposition that the right to a jury trial cannot be waived under Mississippi Rule of Civil Procedure 38(b) through implied conduct. In *Burnette*, this Court found that the filing of an action in chancery court, where a jury is not available, did not function as a waiver of the right to a jury trial when the case was transferred to circuit court, where a jury is available. *Id.* at 952. The Court held that, because the Burnettes had not filed "a specific written

---

[4] The Fryars claim that the Rolisons' argument is barred by Mississippi Code Section 11-3-15 (Rev. 2014), which provides that "[a]fter the dismissal of an appeal or supersedeas by the Supreme Court, another appeal or supersedeas shall not be granted in the same cause, so as to bring it again before the Court." The Fryars claim that the Rolisons raised the jury trial issue in their dismissed appeal and they cannot raise it again. We do not address this statutory argument because the jury trial issue may be resolved fully under the Mississippi Rules of Civil Procedure and the Mississippi Rules of Appellate Procedure.

stipulation waiving their right to a jury, they have not waived that right. *Id.* Thus, *Burnette* held that a party may waive the right to a jury trial under Rule 38(b) only by filing a written waiver.

¶16.    In this case, it is undisputed that the Rolisons never filed a written jury trial waiver. Therefore, the trial court erred by finding that they had waived the right to a jury trial. However, this Court will affirm if the trial court reached the correct result, but for the wrong reason. *Love v. Barnett*, 611 So. 2d 205, 207 (Miss. 1992). Although the trial court incorrectly determined that the Rolisons had waived their right to a jury trial, we find the issue to be one of forfeiture. "[W]aiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is 'the intentional relinquishment or abandonment of a known right.'" *U.S. v. Olano*, 507 U.S. 725, 733, 113 S. Ct. 1770, 1777, 123 L. Ed. 2d 508 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461 (1938)). When a party fails to demand a jury trial and proceeds to try the case to the bench, the party, having failed to exercise the jury trial right in a timely manner, forfeits the right to complain. That is what occurred in this case. The Rolisons tried the breach of contract issue to the bench and failed to demand a jury trial until the damages phase. Because the Rolisons forfeited the right to a jury trial by failing to exercise the right in a timely manner, we affirm the trial court's finding that the Rolisons were not entitled to a jury trial on the issues of damages and attorney fees.

> II. WHETHER THE TRIAL COURT ERRED BY DIRECTING THE ENTRY
> OF THE RULE 54(B) FINAL JUDGMENT.

¶17.    Under Rule 54(b), the trial court may "direct the entry of a final judgment as to one

10

or more but fewer than all of the parties only upon an expressed determination that there is no just reason for delay and upon an expressed direction for the entry of the judgment." M.R.C.P. 54(b). This Court has held that a decision that leaves a portion of a claim pending as to all defendants may not be certified as a final, appealable judgment under Rule 54(b). *Brown v. Collections, Inc.*, 188 So. 3d 1171, 1175 (Miss. 2016). The Rolisons argue that this prohibition is implicated in this case because the Fryars brought a single claim, for breach of the mediation settlement agreement, against all defendants. The Rolisons argue that the trial court erred by directing the entry of the Rule 54(b) final judgment after ruling on the breach of the mediation settlement agreement. They contend that, because the Fryars' remaining requests for damages and attorney fees were simply damages for their breach of contract claim, they were not separate "claims" for the purposes of Rule 54(b).The Rolisons argue that, because the entry of a Rule 54(b) final judgment was erroneous, this Court can now address all claims adjudicated by the Rule 54(b) final judgment.

¶18.    This Court lacks jurisdiction to address any claims embraced by the Rule 54(b) final judgment. This is because the Rolisons' time for appealing that judgment has expired. A notice of appeal must be filed within thirty days after the date of the entry of the judgment from which appeal is taken. M.R.A.P. 4(a). The Rolisons appealed the Rule 54(b) final judgment; but, when they voluntarily dismissed their appeal after the expiration of the thirty day period, they lost the opportunity to challenge any issues embraced by the Rule 54(b) final judgment.

¶19.    The Rolisons argue that, because the trial court's Rule 54(b) certification was

11

erroneous, the judgment was not final, but interlocutory, and ineffective to commence the running of the thirty day time for appeal. This argument is without merit. "A judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review . . . ." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981) (citations omitted). This precept applies to an erroneous Rule 54(b) certification. "A Rule 54(b) certification, right or wrong, starts the time for appeal running." *In re Lindsey*, 59 F.3d 942, 951 (9th Cir. 1995). Thus, once a trial court has directed the entry of a final judgment under Rule 54(b), any party seeking relief from that judgment, even on the ground that the judgment is, in fact, interlocutory, must perfect an appeal within thirty days after the entry of judgment. *Id.* When a party perfects an appeal from a Rule 54(b) final judgment, this Court's routine jurisdictional inquiry includes determining whether the judgment was, in fact, a proper exercise of the trial court's authority under Rule 54(b). *See Brown*, 188 So. 3d at 1173. If the judgment was interlocutory because the requirements of Rule 54(b) were not met, this Court has not hesitated to reverse for lack of jurisdiction. *Id.*; *Cox v. Howard, Weil, Labouisse, Friedrichs, Inc.*, 512 So. 2d 897, 899 (Miss. 1987).

¶20.    Because the Rolisons dismissed their appeal, they lost their opportunity to challenge the issues embraced by the Rule 54(b) final judgment, including whether the entry of the judgment complied with Rule 54(b). The Rolisons' argument that the Rule 54(b) final judgment was interlocutory is untimely. Therefore, this Court lacks jurisdiction to adjudicate the argument. M.R.A.P. 4(a).

III. WHETHER THE TRIAL COURT ERRED BY DENYING THE MOTION TO INTERVENE BY GARY WAYNE ROLISON, JR., AND THE ROLISON LOGGING/TIMBER COMPANY TRUST.

¶21. The Rolisons complain that the trial court erroneously disallowed the intervention of Gary Wayne Rolison, Jr., and the Rolison Logging/Timber Company Trust. They argue that, because these parties owned equipment and material on the sawmill property, their participation in the litigation was necessary. They also contend that the trial court's finding that Gary Rolison and Martha Rolison had express or apparent authority to bind their son or the trust was baseless.

¶22. Again, this issue is not properly before the Court. The trial court resolved this issue in its bench ruling after the trial on the motion to enforce the mediation settlement agreement. Subsequently, it entered a Rule 54(b) final judgment, from which the Rolisons perfected, and later dismissed, an appeal. Because the Rolisons dismissed their appeal and the time for taking an appeal from the Rule 54(b) final judgment has long passed, the Rolisons lost the opportunity to challenge the trial court's denial of the motion to intervene.

IV. WHETHER, BECAUSE THE PLAINTIFFS FAILED TO MITIGATE THEIR DAMAGES, THE TRIAL COURT ERRED BY FINDING THAT THE BREACHING PERIOD WAS FIFTEEN MONTHS.

¶23. The trial court found that the breaching period was fifteen months, with a beginning date of July 1, 2011, when the Fryars would have begun sawmill operations had they purchased the sawmill property as promised, and an ending date of September 14, 2012, when the Fryars would have been able to begin sawmill operations after taking possession pursuant to the second settlement agreement if the sawmill property had not been in disrepair.

13

The Rolisons and the Fryars consummated the second settlement agreement in August 2012. This settlement agreement provided that the Rolisons would convey the sawmill property to the Fryars by quitclaim deed. It also provided that the Rolisons would convey certain sawmill equipment to the Fryars, including the blue mill. The agreement stated that the Rolisons had fourteen days to remove certain equipment and materials from the property, including eighty percent of the cypress lumber and eighty percent of the pine lumber and timber. The agreement provided that the Rolisons would leave twenty percent of the cypress lumber and twenty percent of the pine lumber and timber on the property. In exchange for all of this, the Fryars would pay the Rolisons $400,000.

¶24. At trial, the Rolisons showed that the Fryars had refused a similar settlement arrangement that they were offered on November 23, 2011. On that date, the Rolisons offered to execute a quitclaim deed for the land and a bill of sale for the same equipment, including the blue mill. But they did not offer to sell the Rolisons any of the lumber on the property. Significantly, both the August 2012 settlement agreement and the November 2011 offer provided that the Rolisons would get less than "all equipment and materials located on said property as is where is as of the date of this agreement . . . ." as they had been promised in the mediation settlement agreement.

¶25. The Rolisons argue that, if the Fryars had accepted the November 23, 2011, settlement offer, they would have had the sawmill operational in the next six weeks, prevented nine months of deterioration to the sawmill property, and likely prevented the theft and vandalism that further damaged the property. They contend that the Fryars' refusal of the November 23,

14

2011, offer was unreasonable and failed to mitigate damages and, therefore, the trial court should have limited the breaching period to six months. The Fryars counter that this argument is "absurd" because they had no duty to mitigate damages by accepting less than they had been promised in the mediation settlement agreement.

¶26. An injured party has a duty to take reasonable steps to mitigate damages. *Nat'l Dairy Prods. Corp. v. Jumper*, 241 Miss. 339, 334, 130 So. 2d 922, 923 (1961). Under the doctrine of avoidable consequences, an injured party is not entitled to recover damages which he or she could have avoided through reasonable efforts. *Manhattan Nursing & Rehab. Ctr., LLC v. Pace*, 134 So. 3d 810, 818 (Miss. Ct. App. 2014) (citing *Munn v. Algee*, 924 F.2d 568, 573 n.9 (5th Cir. 1991) (collecting Mississippi cases)). "This legal principle 'deals not with the conduct of a plaintiff contributing to his injury, but with his failure to avoid the consequences of his injury after it has been inflicted, to avoid or diminish the damages resulting from his injury.'" *Manhattan Nursing*, 134 So. 3d at 818 (quoting *Yazoo & M.V.R. Co. v. Fields*, 188 Miss. 725, 732, 195 So. 489, 490 (1940)).

¶27. This Court rejects the Rolisons' argument that the trial court should have limited the breaching period to six months due to their November 2011 settlement offer. The Rolisons' November 2011 offer was for less than the Fryars were entitled to receive under the court order for performance of the mediation settlement agreement. The Fryars did not act unreasonably by refusing to enter into a new contract for less than they had bargained for in the mediation settlement agreement. Although the Fryars' negotiation of the August 2012 agreement gained them little more than the Rolisons had offered in November 2011, the

Fryars had no duty to mitigate damages by entering into a new contract for less than they were entitled to receive under the mediation settlement agreement. *See **United States v. Sabin Metal Corp.***, 151 F. Supp. 683, 690 (S.D.N.Y. 1957) (stating that "[t]he defendant's offer to the plaintiff of something other than that to which it is entitled as compensation is not admissible in mitigation").

> V. WHETHER THE TRIAL COURT ERRED BY AWARDING THE FRYARS DAMAGES FOR DETERIORATION OF THE SAWMILL PROPERTY.

¶28. The Rolisons argue that language in the August 2012 settlement agreement foreclosed the Fryars' recovery for deterioration of the sawmill property that occurred during the breaching period. Specifically, the Rolisons assert that the August 2012 settlement agreement stated that the Fryars accepted the sawmill property and equipment "as is, where is," as of the date of the agreement. But the August 2012 settlement agreement and the associated bills of sale do not contain the words "as is, where is" or any other language indicating the Fryars intended to relinquish their claim for damages attributable to the breached mediation settlement agreement. To the contrary, the settlement agreement stated that "[t]his Settlement Agreement in no way compromises or addresses the claim for damages that Caleb Fryar has against the parties to the above captioned litigation, should he choose to pursue that cause of action." In the motion to enforce the settlement agreement, the Fryars had claimed reasonable damages incurred due to the delay caused by the Rolisons' breach. Thus, the August 2012 settlement agreement preserved the Fryars' claim for damages for breach of the mediation settlement agreement, including deterioration of the sawmill property.

16

VI. WHETHER THE TRIAL COURT ERRED BY AWARDING DAMAGES FOR THE STOLEN MOTORS AND STOLEN AND/OR DAMAGED WIRING AT THE MILL.

¶29. The Fryars showed that, during the breaching period, several motors had been removed and wiring intentionally was cut and/or removed from the blue mill, which was the sawmill the Fryars eventually began operating. Investigator Josh Bateman with the Tippah County Sheriff's Department testified that three persons had been charged with theft of motors and wiring from the sawmill property that had been reported on July 6, 2012, and July 13, 2012. The Fryars presented evidence that the missing motors had a value of $39,433.50. They showed that the damaged or missing wire had cost $36,827.50 to replace or repair. The trial court accepted the Fryars' proof and awarded them the amounts claimed.

¶30. The Rolisons contend that the trial court erred by awarding the Fryars damages for the missing motors and missing or damaged wiring. First, they argue that the Fryars' agreement to accept certain equipment at the sawmill property "as is, where is" on August 15, 2014, precludes their recovery. As noted in the discussion of the previous issue, the August 15, 2014, agreement does not include the language, "as is, where is," and it expressly preserved the Fryars' claim for damages for breach of the mediation settlement agreement.

¶31. Second, the Rolisons argue that the Fryars failed to prove that the value of the missing motors was $39,433.50. However, even if the extent of damages is uncertain, recovery is allowed if the nature of the damages is certain. *Benchmark Health Care Ctr., Inc. v. Cain*, 912 So. 2d 175, 179 (Miss. Ct. App. 2005). This Court has stated that:

> [W]here it is reasonably certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery or prevent a jury decision

17

awarding damages. This view has been sustained where, from the nature of the case, the extent of the injury and the amount of damage are not capable of exact and accurate proof. Under such circumstances, all that can be required is that the evidence – with such certainty as the nature of the particular case may permit – lay a foundation which will enable the trier of fact to make a fair and reasonable estimate of the amount of damage. The plaintiff will not be denied a substantial recovery if he has produced the best evidence available and it is sufficient to afford a reasonable basis for estimating his loss.

*Cain v. Mid-South Pump Co.*, 458 So. 2d 1048, 1050 (Miss. 1984).

¶32.   The Fryars' proof that the value of the missing motors was $39,433.50 was a quote from supplier JESCO, Inc., to replace each type of missing motor with a new motor. The Rolisons did not refute the reasonableness of these costs. In fact, the Rolisons admitted that they had claimed $55,000 from their insurance company for the value of the missing motors. We find that the Fryars provided the trial court a reasonable foundation to estimate the damages, and the trial court's decision to award the Fryars $39,433.50 for the missing motors was supported by substantial, credible evidence.

¶33.   Next, the Rolisons argue that they should not have been held liable for missing motors and wire removed from the sawmill property by thieves. However, they cite no authority for this proposition. "This Court has repeatedly held that failure to cite any authority may be treated as a procedural bar." *City of Jackson v. Internal Engine Parts Grp., Inc.*, 903 So. 2d 60, 66 (Miss. 2005) (citing *Williams v. State*, 708 So. 2d 1358, 1361 (Miss. 1998)). Notwithstanding the procedural bar, the theft and vandalism itself evidenced that the Rolisons had failed to secure the property reasonably against third-party criminal activity.

VII. WHETHER THE TRIAL COURT ERRED BY COMPENSATING THE FRYARS FOR DAMAGE TO THE SCALES.

18

¶34. A set of scales was located on the sawmill property that was used to weigh logging trucks. Ownership of the scales was disputed between the Rolisons and the Fryars; however, at the trial it was established that the Fryars owned the scales. But, because the scales were located on the sawmill property which the Rolisons owned, the Rolisons exercised dominion and control over the scales during the breaching period. In fact, at the bench trial on the motion to enforce the settlement agreement, Gary Wayne Rolison, Jr. testified that the Rolisons had paid to have concrete poured so the scales could be recertified to comply with certain government regulations.

¶35. Caleb Fryar testified that, when the Fryars took possession of the property after the August 15, 2012, settlement agreement, he discovered that the wires to the scales had been cut, necessitating repair costs. He also incurred costs to add concrete and asphalt to level the scales to comply with a new regulation. He testified that, if he had gained possession of the sawmill property in 2011 pursuant to the mediation settlement agreement, the scales would have been "grandfathered in," and no modifications would have been required to comply with the new regulation. The trial court awarded the Fryars the $10,873.02 they claimed for damages related to the scales.

¶36. The Rolisons argue that, because the Fryars owned the scales, they were not entitled to recover the costs of the cut wires or the required modifications to the scales. They further argue that, because the Fryars owned the scales, they and not the Rolisons were responsible for their upkeep. Further, they argue that, because the Fryars had owned the scales all along, the scales were "grandfathered in" and the Fryars were not required to modify them and did

19

so at their own peril.

¶37. We find that the trial court's award of the full cost claimed by the Fryars to repair and modify the scales was supported by substantial, credible evidence. The damage to the scales' wiring occurred when the scales were under the dominion and control of the Rolisons. And Caleb Fryar testified that the regulation required modification of the scales when they came into his possession. The Rolisons did not refute this testimony by showing that the regulation required no modification of the scales if they were under continuous ownership by the same individual or entity. Certainly, the scales were not in continuous operation, and the regulation may have required the modification when use of the scales resumed. In any event, Caleb Fryar's testimony constituted substantial, credible evidence upon which the trial court was entitled to rely.

> VIII. WHETHER THE TRIAL COURT ERRED BY AWARDING THE FRYARS COMPENSATION FOR MISSING SCRAP METAL.

¶38. During the breaching period, the Rolisons' son, Gary Wayne Rolison, Jr., removed scrap metal from the sawmill property despite the court order not to remove anything from the property. Caleb Fryar presented photographs of Gary Wayne Rolison, Jr., removing scrap metal, and he testified that approximately one-half of the scrap metal on the property had been removed. The trial court found that the Rolisons had allowed items to be removed from the sawmill property in violation of the court order. The Fryars valued the missing scrap metal at $22,471.95, representing the amount they had received when they sold the remaining scrap metal. The trial court found that the Fryars had presented the best estimate of the value of the missing scrap metal, and awarded them $22,471.95.

20

¶39.    The Rolisons argue that the Fryars were not entitled to compensation for the missing scrap metal because Gary Wayne Rolison, Jr., was not a party to the litigation. With this contention, they repeat their argument that the Rolisons cannot be held liable for damage to the sawmill property caused by third parties. Again, the Rolisons cite no authority for this proposition, so this argument is procedurally barred. *Internal Engine Parts Grp., Inc.*, 903 So. 2d at 66. Notwithstanding the procedural bar, the trial court specifically found that the Rolisons had allowed others to remove items from the property, in violation of the court order.

¶40.    The Rolisons also argue that Gary Wayne Rolison, Jr., would have been unable to remove the 130 tons of scrap metal which the Fryars claimed was missing because removing that amount would have required multiple eighteen wheelers. The trial court was faced with conflicting evidence on the scrap metal issue. We find that the trial court's resolution of the conflicting evidence in favor of the Fryars was supported by substantial, credible evidence.

> IX. WHETHER THE TRIAL COURT ERRED BY AWARDING THE FRYARS DAMAGES FOR LOST PROFITS.

¶41.    The Fryars claimed lost profits of $230,356.47 attributable to their inability to run the blue mill during the breaching period. The trial court found that they had presented the testimony of "experts with substantial experience" in the sawmill industry to support the lost profits claim. With the assistance of the experts, the Fryars compiled monthly profit and loss projections which were admitted into evidence.

¶42.    The Fryars' projections showed they expected to cut an average of 20,000 board feet of lumber per day. The projections included the number of work days per month, the cost of

21

logs, and the prices at which the Fryars expected to sell the three types of lumber produced by the blue mill, including crossties, one-inch lumber, and "cants," defined as four-by-six-inch lumber. The projections also included other expected costs of production including payroll, workers' compensation insurance, and other expenses. Caleb Fryar testified that, for the breaching period, Koppers, Inc., had agreed to buy all crossties produced, Hassell & Hughes Lumber Company had agreed to buy all one-inch lumber produced, and Tenn-Tom Pallet had committed to buy all cants produced. Representatives from Koppers, Inc., and Hassell & Hughes Lumber Company corroborated Caleb Fryar's testimony about their companies' purchasing commitments. The general manager of another lumber company gave expert testimony supporting the Fryars' projections. The Fryars also showed that they had run the blue mill for approximately six days in December 2014 and averaged more than 20,000 board feet per day.

¶43. The Rolisons presented the testimony of an accountant, Charles L. Davis, Jr., along with documents showing that Rolison Tie and Timber Company had operated the blue mill at a loss in 2006. Davis testified that he had compared the Fryars' projections with the actual operating expenses that Rolison Tie and Timber Company had incurred in 2006 and had concluded that the Fryars would have operated at a loss during the breaching period. However, it was established that Davis had not considered certain lumber that Rolison Tie and Timber Company had cut, but not sold, that was left on the sawmill property. Nor did he take into consideration that, instead of the fifteen employees that Rolison Tie and Timber Company had used to run the blue mill, the Fryars planned to use eight. Further, Davis

22

admitted that the Fryars planned to cut different types of wood than Rolison Tie and Timber Company had cut. He also admitted that the goal of cutting 20,000 board feet per day was a conservative estimate of what the Fryars could produce.

¶44. The trial court found that the Fryars had sustained lost profits during the breaching period. The trial court found from the testimony of the industry experts and the accountant that, if the sawmill had operated during the breaching period, a supply of materials and a market had existed for the sawmill's finished products. The trial court found that this testimony "removed the question of whether revenue, costs, and profit might be speculation." The trial court further found from the testimony of Samuel Robert Bradley, a regional director for Koppers, Inc., that the amount of money available from Koppers for lending to sawmills had reduced drastically from the time the Fryars had tendered their purchase money to the Rolisons under the mediation settlement agreement and when the Fryars actually took possession of the sawmill in August 2012. Bradley testified that, if the Fryars had received the sawmill when promised under the mediation settlement agreement, Koppers, Inc., had $250,000 available for the purchase of logs to get the mill running.[5] Bradley testified that, due to changes in the market and funds availability unrelated to this case, the funds available to the Fryars had been reduced to $50,000. The trial court found that the evidence supported a loss of profits of $75,000. Thus, the trial court awarded less than half of the lost profits claimed by the Fryars. The trial court did not explain how it determined this number or note which evidence it found most credible.

_____

[5] Caleb Fryar testified that Koppers had agreed to lend him money to buy logs and to fund operating expenses with repayment in crossties.

¶45.    The Rolisons argue that the Fryars' projections contain several miscalculations which, when corrected, show that the blue mill would have operated at a loss. First, they contend that the Fryars' claim that they would have produced an average of 238 crossties a day is erroneous, because the evidence showed they would have averaged only 217 crossties a day. The Fryars claimed they would have averaged 10,000 board feet of crossties per day. The Fryars' evidence that they would have averaged 238 crossties a day was based on the testimony of Koppers, Inc., employee Joe Foley and sawmill manager Tony Jarrell that 10,000 board feet would yield approximately 238 seven-by-nine-inch crossties. Thus, the trial court was presented evidence supporting the Fryars' projected crosstie production.

¶46.    Second, the Rolisons contend that the Fryars underestimated the costs to operate the blue mill. The Fryars' expenses for the approximately six days of operation in December 2014 showed $158 for workers' compensation insurance and nothing for taxes and liability insurance. The Rolisons complain that the Fryars' expert, Tony Jarrell, represented that it would cost $4,000 per month for taxes and liability insurance and $2,000 a month for worker's compensation insurance to run the sawmill. The Rolisons claim that, correcting for these errors, a proper calculation of operating expenses would mean the mill cost $134.56 per thousand board feet to operate, not $112.50 as claimed by the Fryars. However, the Rolisons' expert accountant testified that, considering Tony Jarrell's calculations, $112.50 per thousand board feet in operating expenses for the blue mill was a conservative estimate. And Tony Jarrell testified that the cost of workers' compensation insurance varies, and that his workers' compensation estimate of $2,000 per month was based on the cost of workers'

compensation for his own sawmill, which had increased coverage costs due to accidents. Thus, the trial court was within its discretion in relying, to whatever extent it did, on the Fryars' estimate of tax and insurance expenses. Moreover, the trial court awarded the Fryars less than half of their claim for lost profits.

¶47. Next, the Rolisons attack the Fryars' claim that the cost of logs was $55 per ton. They contend that the Fryars' expert, Tony Jarrell, admitted that the cost of oak logs was between $60 and $62 per ton, and Gary Rolison testified that he had sold oak logs for between $60 and $68 during the breaching period. However, Caleb Fryar testified that the projections considered that they would buy both oak and mixed hardwood logs, and Tony Jarrell testified that mixed hardwood logs cost $55 per ton. The Rolisons fail to explain how these differences in log costs would have destroyed the profitability of the Fryars' milling operation during the breaching period. Importantly, the trial court awarded the Fryars less than half of their claimed lost profits. The trial court was permitted to accept, to the extent that it did, the Rolisons' estimate of the cost of logs.

¶48. The Rolisons also complain that the representative from Hassell & Hughes Lumber Company testified that, although the company had committed to purchase all the one-inch lumber the Fryars produced, the company never had bought one-inch lumber from the Fryars. However, Caleb Fryar testified that he currently was selling all the one-inch lumber to another customer. Thus, contrary to the Rolisons' argument, the Fryars did present evidence of a market for one-inch lumber.

¶49. The Rolisons also argue that the trial court should have placed more weight on the fact

25

that, in 2006, Rolison Tie and Timber Company had run the blue mill at a loss than on the Fryars' projection of future profits. They also complain that the Fryars had operated the blue mill in October and November 2014 but submitted no data for those months. "In Mississippi, a party may recover for loss of future profits in a breach of contract action so long as such profits are proved to a reasonable certainty and not based on mere speculation or conjecture." **Benchmark Health Care Ctr. v. Cain**, 912 So. 2d 175, 179 (Miss. Ct. App. 2005). When damages have occurred, mere uncertainty as to the amount does not preclude recovery. **Id.** (quoting **Cain v. Mid-South Pump Co.**, 458 So. 2d 1048, 1050 (Miss. 1984)). "[A]ll that can be required is that the evidence – with such certainty as the nature of the particular case may permit – lay a foundation which will enable the trier of fact to make a fair and reasonable estimate of the amount of damage." **Cain**, 458 So. 2d at 1050. The plaintiff is entitled to recover if he has produced the best evidence available and that evidence provides a reasonable basis for estimating the loss. **Id.** Purely speculative evidence of lost profits is inadequate to support an award. **Benchmark**, 912 So. 2d at 180. But "[s]ome speculation must be involved in an attempt to compute unrealized profits." **Id.**

¶50.    The Rolisons argue that, unlike in this case, in **Benchmark**, the lost future profits evidence was based on past profits. **Id.** They further argue that, in **Ballard Realty Co., Inc. v. Ohazurike**, 97 So. 3d 52 (Miss. 2012), this Court found that the plaintiff had not presented adequate evidence of lost profits. In **Ohazurike**, this Court found that the plaintiff's proof of lost profits was unreliable because the plaintiff's expert merely had adopted the plaintiff's "grandiose figures" and had reduced those amounts to present value. **Id.** at 61. And the expert

26

failed to deduct overhead, depreciation, taxes, or inflation. *Id.* This Court also found that another expert's testimony was unreliable because it was based on lofty estimates from the plaintiff's business plan, and the expert had admitted that historical data is a better basis for valuation. *Id.* at 64.

¶51. We conclude that the trial court's award of $75,000 for lost profits was supported by substantial evidence. The trial court found that the Fryars had put forth the best evidence of lost profits. Unlike *Ohazurike*, the Fryars' projections were based on sound testimony of industry experts and included estimates for the anticipated expenses of running the sawmill. Thus, the projections were not purely speculative, and the trial court was entitled to rely on them. Notably, the trial court awarded the Fryars less than half their projected lost profits. The Rolisons are entitled to no relief on this issue.

> X. WHETHER THE TRIAL COURT ERRED BY AWARDING THE FRYARS THE FULL AMOUNT OF ATTORNEY FEES CLAIMED.

¶52. The trial court found that the Fryars had incurred attorney fees in the amount of $92,772.70 in connection with the enforcement of the breached mediation settlement agreement and that those fees were reasonable and necessary to enforce the settlement agreement fully. The trial court awarded the full amount of attorney fees requested because the Rolisons "intentionally disregarded the expressed and unambiguous terms of the Mediation Agreement and the orders of the Court and removed property or allowed property to be removed that was subject to the Mediation Agreement." The trial court found that this conduct was so outrageous that it supported an award of attorney fees.

¶53. Generally, a party may not recover attorney fees for breach of contract. *Bluewater*

*Logistics, LLC v. Williford*, 55 So. 3d 148, 164 (Miss. 2011). However, attorney fees may be awarded if they are provided for in the contract, or for conduct that is so outrageous that it would support an award of punitive damages. *Id.* The Rolisons argue that attorney fees were not warranted because they complied with the trial court's order enforcing the settlement agreement by making the November 23, 2011, settlement offer to the Fryars.

¶54.    The Rolisons' argument misconstrues the trial court's findings. The trial court found that the Rolisons' breach of the March 2, 2011, mediation settlement agreement was intentional. This finding had nothing to do with the order enforcing the mediation settlement agreement, which the trial court had entered as a remedy for the Rolisons' breach of that agreement. Copious evidence was before the trial court that the Rolisons' breach of the mediation settlement agreement was intentional, including the plain language of the mediation settlement agreement and the testimony of the mediator that, to all appearances, the Rolisons knowingly had agreed to its terms when they signed it. Further, the trial court was confronted with evidence that the Rolisons had removed items from the sawmill property, or had allowed items to be removed, in violation of court orders. Therefore, the trial court's finding that the Rolisons' wrongful conduct was intentional was supported by substantial, credible evidence.

¶55.    The Rolisons also argue that the Fryars were not entitled to full attorney fees because they did not mitigate damages by accepting the November 23, 2011, settlement offer. As discussed in Issue IV, the Fryars' duty to make reasonable efforts to mitigate their damages did not include an obligation to accept the November 23, 2011, offer and to accept less from

28

the Rolisons than what they had bargained for in the mediation settlement agreement. Therefore, this argument is without merit. The trial court did not err by awarding the Fryars their full attorney fees.

## CONCLUSION

¶56. Because the Rolisons dismissed their appeal from the Rule 54(b) final judgment, their arguments that their jury trial waiver was ineffective, that the trial court's Rule 54(b) certification was erroneous, and that the trial court erroneously denied a motion to intervene are not properly before the Court. The trial court's finding that the Rolisons waived their right to a jury trial on damages and attorney fees was not manifestly erroneous. And the trial court's awards of damages and attorney fees were supported by substantial, credible evidence. Therefore, we affirm the judgment of the Circuit Court of Tippah County.

¶57. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KING, COLEMAN AND BEAM, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY LAMAR, J.**

**MAXWELL, JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶58. I agree that the trial court's final judgment should be affirmed. The Rolisons forfeited the right to a jury through their conduct. And the Fryars' award for damages and attorney fees was supported by the evidence.

¶59. But I question the Rule 54(b) certification and the majority's reliance on the finality of that judgment. To me, the December 2011 judgment declaring the settlement agreement enforceable does not appear to have been a final, appealable judgment—despite its Rule

29

54(b) designation. *See* M.R.C.P. 54(b). As this Court recently reiterated, Rule 54(b) can be invoked only "in a relatively select group of cases and applied to an even more limited category of decisions."[6] ***Brown v. Collections, Inc.***, 188 So. 3d 1171, 1175 (Miss. 2015). And "decisions that leave a portion of the claim pending as to all defendants" do not fit in this narrow category. ***Id.***

¶60. Here, as the majority acknowledges, the December 2011 order left a portion of the Fryars' settlement-enforcement claim pending—i.e., the issues of damages and attorney fees. So according to our precedent, it was "not a true Rule 54(b) judgment." ***White v. Mills***, 735 So. 2d 428, 431 (Miss. 1999) (holding the grant of summary judgment was "not a true Rule 54(b) judgment" because it "left a portion of the claim pending—i.e., that portion dealing with the relief due"); *see also* ***Colum Law Firm v. Bd. of Trustees***, 16 So. 3d 692, 695 (Miss. 2009) (holding that "the trial court's ruling as to whether the meeting could be declared void does not properly fall within the purview of Rule 54(b)" because "portions of the claim—the factual allegations and the remaining prayers for relief—are still pending as to all the defendants"). And since it was not a true Rule 54(b) judgment, *no appellate jurisdiction* arose over the Rolisons' earlier appeal. *See* ***Brown***, 188 So. 3d at 175-77 (dismissing the appeal sua sponte for lack of jurisdiction because Rule 54(b) certification was invalid); ***White***, 735 So. 2d at 432 (holding, despite no challenge to the Rule 54(b) certification, the Court of Appeals plainly erred by entertaining the appeal).

---

[6] "For an order or judgment to qualify for Rule 54(b) finality, the case must include: (1) either multiple claims, multiple parties, or both; and (2) either one or more but fewer than all claims must have been decided or all rights and liabilities of at least one party must have been adjudicated." ***Brown v. Collections, Inc.***, 188 So. 3d 1171, 1175 (Miss. 2015).

¶61. It is this lack of appellate jurisdiction that distinguishes this case from the Ninth Circuit case the majority cites, *In re Lindsey*, 59 F.3d 942, 951 (9th Cir. 1995). In that case, the district court made a Rule 54(b) certification without making the requisite on-the-record findings. Still, the Ninth Circuit held that the Rule 54(b) certification triggered the time to appeal because the "lack of . . . findings is not a *jurisdictional* defect." *Id. See also Cox v. Howard, Weil, Labouisse, Friedrichs, Inc.*, 512 So. 2d 897, 901 (Miss. 1987) (suggesting, but not requiring, the "trial court to set forth specific reasons and findings prefatory to entering a Rule 54(b) judgment"). But here, the defect *is* jurisdictional. This is not a case where the trial court *should not* have certified as final a judgment disposing of less than all claims. *See, e.g., Cox*, 512 So. 2d at 901. Rather, this is a case where the trial court *could not* certify its decision as final, because it did not dispose of any claim. *See, e.g.*, *Brown*, 188 So. 3d at 175-77; *White*, 735 So. 2d at 432.

¶62. So the Rolisons have not "lost their opportunity to challenge the issues embraced by the Rule 54(b) final judgment," because no such opportunity arose in the first place. Had the Rolisons pursued their prior appeal—as the majority finds they should have—this Court could not have addressed the issues raised, due to the lack of appellate jurisdiction. Instead, it was only when the settlement-enforcement claim was fully resolved in February 2015 that all underlying issues became final and appealable.

¶63. That said, there is no merit to the Rolisons' jury-trial argument. As the majority points out, the Rolisons litigated the enforcement issue through a bench trial "without objection and without demanding a jury trial." So they forfeited their right to a jury trial. And because of

31

this forfeiture, I concur with the majority that the trial court did not err by continuing the bench trial on the issues of damages and attorney fees.

¶64. I also concur with the majority's holding that the trial court did not err in denying the motion to intervene and in determining appropriate amount of damages and attorney fees. Thus, I concur in part and in result.

**LAMAR, J., JOINS THIS OPINION.**